STATE OF MAINE *vs*. ARTHUR L. CORRIVEAU.

York.     Opinion, February 25, 1932.

*Ralph W. Hawkes*, County Attorney for the State.
*Joseph E. Harvey*, for respondent.

SITTING: PATTANGALL, C. J., DUNN, STURGIS, BARNES, FARRINGTON, THAXTER, JJ.

BARNES, J. On report. A criminal prosecution. The respondent, Arthur L. Corriveau received the degree, Doctor of Optometry, in 1927, from a reputable college, known as the Philadelphia Optical College.

The indictment is as follows:—

"THE GRAND JURORS FOR SAID STATE upon their oath present that

Arthur L. Corriveau of Biddeford

in the County of York, laborer, on the first day of January in the year of our Lord one thousand nine hundred and thirty-one at Biddeford in said County of York, with force and arms on said day and divers other days and dates between said day and the day of the making of this indictment did knowingly, willfully, and unlawfully prefix the letters 'Dr.' to his name, he then and there not being duly registered by the State Board of Registration of Medicine, against the peace of said State and contrary to the form of the Statutes in such case made and provided.

And your jurors aforesaid, on their oath aforesaid, do further present that the said Arthur L. Corriveau at Biddeford in said County on said first day of January, 1931, and on divers other days and dates between that day and the day of the making of this indictment, did knowingly, willfully, and unlawfully use the title 'Dr.' by maintaining a sign in the following words, 'Dr. Arthur L. Corriveau' at his place of business, he then and there not being duly registered by the State Board of Medicine, against the peace of said State, and contrary to the form of the Statute in such case made and provided."

At the October Term of the Superior Court, 1931, the case was taken from the jury and reported to this court, on an agreed statement, stipulating that "on the day and date alleged in the indictment, on the door entrance of the office of Arthur L. Corriveau, located at No. 9 Alfred Street, Biddeford, Maine, was the lettering 'Dr. Arthur L. Corriveau, Optometrist.' On the window of his said office was the lettering, 'Dr. Arthur L. Corriveau, Optometrist.'

"He is a duly registered optometrist in the State of Maine, and received his certificate to practice optometry in this State on July 13, 1922, said certificate being represented by No. 248. His practice is confined to the provisions of law of this State, as found in Sec. 48, Chap. 21, R. S. 1930.

"Arthur L. Corriveau is not registered by the Board of Registration of Medicine, as provided in Sec. 11, Chap. 21, R. S. 1930.

"He is not engaged and does not engage in the practice of medicine or surgery, or the treatment of any disease or human ailment, nor does he hold himself out to practice medicine or surgery, or the treatment of any disease or human ailment, or any branch thereof, within the State, unless the fitting, bending and adjusting of spectacles and of eye glasses with opthalmic lenses for the betterment of vision, is the practice of medicine or surgery."

It is further stipulated that, "if the indictment is insufficient in law in that no offense is lawfully stated therein, the same to be adjudged bad, and a *nol pros* to be entered. It being further stipulated that if the respondent be found to come under the excepting or proviso clause of said Section (R. S., Chap. 21, Sec. 15), or of any other statutory provision, as the case may be, which furnishes matter of excuse for the respondent in the acts complained of in said indictment, a *nol pros* is to be entered.

"If the Law Court determines that an offense is lawfully stated, but that the respondent comes under the benefits of the exception or proviso clause, or of any other statutory provision, said indictment to be quashed.

"If, however, the Law Court finds that an offense is lawfully stated, and the indictment is sufficient in law, and the respondent does not come under the excepting or proviso clause in said Sec-

tion, or of any other statutory provision, the respondent is to stand convicted, unless the Law Court shall otherwise order."

The sufficiency of the indictment is not directly challenged and we hold it good.

"Constitutional provisions for the protection of an accused person exact only such particularity of allegation as may enable the accused to understand the charge against him and to prepare his defense." *State* v. *Haapanen*, 129 Me., 28.

"While the rules of criminal pleading in this state are not unreasonably technical, this court has insisted that indictments should be drawn with care and exactness. No person can be held to answer to a criminal charge until it is fully, plainly, substantially and formally described to him.

"Every material fact which serves to constitute the offense must be expressed with reasonable fullness, directness and precision. *State* v. *Perley*, 86 Me., 431. The doctrine of the court is identical with that of reason. The indictment must contain an allegation of every fact which is legally essential to the punishment to be inflicted." *State* v. *Beattie*, 129 Me., 229.

Without deciding that the state's attorney can by agreement prevent adjudication on acts alleged in an indictment as criminal, other than by entry of *nol pros*, we proceed to consider the situation presented in the record before us.

In this case the state's attorney agrees with counsel for the respondent that in determining guilt or innocence under the pertinent statute, the court is limited to consideration of the single question whether a person fitting, bending and adjusting spectacles and eye glasses, and fitting spectacles and eye glasses with opthalmic lenses for the betterment of vision is engaged in the practice of medicine or surgery.

But the privilege of prefixing the letters "Dr." to one's name, when proceeding to treat a person for impairment of vision, or soliciting the business of such treatment, must be considered in a field that necessarily ranges beyond the limits of the confines set up by the agreement of counsel. The statute before us for interpretation requires' more than handicraft in deciding what external appliances shall be deemed appropriate and effective to aid the organ of man's sight in the performance of its functions.

The practice of optometry is defined in R. S., Chap. 21, Sec. 48, and we are not here deciding that an optometrist, doing and holding himself out to do any one or any combination of the practices included in our statute definition may not be engaged in the practice of medicine. Upon this issue courts of last resort in other jurisdictions have pronounced opinions, and they are not in accord.

We are to interpret another statute, Section 15 of the same chapter, so far as applicable to respondent's case. Section 15 reads:—

"Unless duly registered by said board, no person shall practice medicine or surgery, or any branch thereof, or hold himself out to practice medicine or surgery or any branch thereof for gain or hire within the state, by diagnosing, relieving in any degree, or curing, or professing or attempting to diagnose, relieve or cure human disease, ailment, defect, or complaint, whether physical or mental, or of physical or mental origin, by attendance, or by advice, or by prescribing or furnishing any drug, medicine, appliance, manipulation, method, or any therapeutic agent whatsoever or in any other manner, unless otherwise provided by statute of this state. Unless duly registered by said board, no person shall prefix the title 'Doctor' or the letters 'Dr.,' or append the letters 'M.D.,' to his name, or use the title of doctor or physician in any way, excepting that any member of the Maine Osteopathic Association may prefix the title 'Doctor' or the letters 'Dr.,' to his name, when accompanied by the word 'Osteopath.' Whoever not being duly registered by said board practices medicine or surgery, or any branch thereof, or holds himself out to practice medicine or surgery, or any branch thereof in any of the ways aforesaid, or who uses the title 'Doctor' or the letters 'Dr.' or the letters 'M.D.' in connection with his name, contrary to the provisions of this section, shall be punished by a fine of not less than one hundred dollars, nor more than five hundred dollars for each offense, or by imprisonment for three months, or by both fine and imprisonment; the prefixing of the title 'Doctor' or the letters 'Dr.' or

the appending of the letters 'M.D.' by any person to his name, or the use of the title of doctor or physician in any way by any person not duly registered as hereinbefore described shall be *prima facie* evidence that said person is holding himself out to practice medicine or surgery contrary to the provisions of this section; provided, that nothing herein contained shall prevent any person who has received the doctor's degree from any reputable college or university, other than the degree of 'Doctor of Medicine' from prefixing the letters 'Dr.' to his name, if he is not engaged, and does not engage, in the practice of medicine or surgery or the treatment of any disease or human ailment."

The exceptions specified in the section quoted and in the following section, the sixteenth, are not applicable to respondent's case.

By the agreed statement of facts we understand that counsel are asking whether respondent is excluded from the prohibition against prefixing the letters "Dr." to his name by virtue of the last proviso in the section stated.

The agreed statement stipulates, in effect, that he is to be found not guilty if we find it to be the law that one who engages in the business or profession of fitting, bending and adjusting spectacles and eye glasses with ophthalmic lenses for the betterment of vision is not thereby practicing medicine or surgery.

As already intimated, we find the proviso broader than the meaning of the stipulation.

The proviso, as we understand it, renders immune from punishment a person, to whom any doctor's degree other than the degree of Doctor of Medicine has been awarded by any reputable college, who prefixes the letters "Dr." to his name, if that person is not engaged, and does not engage, in the practice of medicine or surgery or in the treatment of any disease or human ailment.

Such we hold to have been the intent of the legislature in this enactment of law.

The section is an apt illustration of a state exercising its police power. It was set up to protect the individual from the danger of submitting to incompetent hands when he felt the need of medical

aid, surgical attention, the arresting or cure of disease, or relief from ailment; to preserve and promote the public health.

The words disease and ailment gain nothing from definition. Their weight is appreciated by the great majority of human kind, if not by all.

But in the first part of the section of the statute which we are considering, the legislature announces that diagnosing, relieving in any degree, or curing, or professing or attempting to diagnose, relieve or cure any human disease, ailment, defect, or complaint, whether physical or mental, or of physical or mental origin, by attendance, or by advice, or by prescribing or furnishing any drug, medicine, appliances, manipulation, method, or any thera-peutic agent whatsoever, or in any other manner, is the practice of medicine or surgery.

It is inconceivable that anyone would solicit the services of one who holds himself out to prescribe and adjust lenses for the eye, except in the case of a seeker for personal adornment, unless he felt disease, defect or ailment.

The indictment holds respondent to answer for a crime.

Defense, as we understand the report, is despaired of unless the final proviso of the section defining the crime includes the re-spondent when engaged in the practices mentioned in the proviso.

The Law Court is asked to say whether he is guilty or innocent, and that upon what it holds to be but a partial statement of the facts essential to determination.

This we decline to do.

*Report discharged.*