JAMES A. BAUER ET AL., APPELLANTS, V. STATE GAME, FORESTATION AND PARKS COMMISSION ET AL., APPELLEES.

293 N. W. 282

FILED JULY 12, 1940. No. 30855.

*R. A. Robinson* and *Robins & Yost*, for appellants.

*Walter R. Johnson, Attorney General,* and *Don Kelley,* contra.

Heard before SIMMONS, C. J., ROSE, PAINE, CARTER, MESSMORE and JOHNSEN, JJ.

PAINE, J.

The legislature of 1939 enacted a law for a game refuge on the Platte river, and both sides thereof, from the west boundary line of Dodge and Saunders counties as far east as the Venice bridge near Yutan, and making it unlawful to hunt therein. Plaintiff filed petition in equity, asking that said law be declared unconstitutional and void, and that the State Game, Forestation and Parks Commission be enjoined from carrying out its provisions. Demurrer of defendants was sustained, and plaintiffs refusing to plead further, their petition was dismissed, from which ruling plaintiffs appeal.

This case involves a constitutional question, and section 2, art. V of the Constitution of Nebraska, provides in reference to this court passing upon the constitutionality of statutes: "A majority of the members sitting shall have authority to pronounce a decision except in cases involving the constitutionality of an act of the legislature. No legislative act shall be held unconstitutional except by the concurrence of five judges." There being but six judges sitting, it was stipulated by counsel in open court that Justice

Eberly, who was out of the state, should participate on briefs.

However, rule 6-b of this court provides, in reference to constitutional questions: "All judges of the court, however, shall participate in all decisions of such questions as if the case had been argued to the full bench, whether having heard oral argument or not." In accordance with this rule, Justice Eberly participated in this decision.

Legislative Bill No. 205 was introduced by Richard N. Johnson, of Dodge county, and M. E. Westley, of Butler county, the title of the act reading as follows: "An Act to create and establish additional state game refuge on each side of the banks of the Platte river between the counties of Dodge and Saunders in said state; to regulate and prohibit the coursing or killing of game birds or other birds therein; to provide penalties for the violation thereof; and to declare an emergency." Laws 1939, ch. 43.

The three sections of the bill to which exceptions are taken read as follows:

"Section 1. For the better protection of birds and the establishment of breeding and resting places therefor, the following area within the state of Nebraska is hereby set aside, designated and established as a state game refuge: All that portion of the state of Nebraska on the Platte river, and for ten rods on each side of the banks of said stream from the west line of Dodge and Saunders counties east and southeast to a point on said Platte river to the bridge on U. S. Highway No. 16 south and east of Yutan.

"Sec. 2. The Game, Forestation and Parks Commission is directed to place suitable signs showing the boundaries of the refuge and on all roads leading thereinto.

"Sec. 3. It shall be unlawful for any person or persons at any time to hunt, kill, capture or chase with dogs, any game birds, game animals or other birds or animals of any kind or description whatever, or to carry firearms of any kind or to have dogs within the limits of said game refuge, as designated in the second preceding section: Provided, this shall not prevent any one carrying firearms or dogs

across the preserve at any point on said refuge, nor shall it prevent any person taking fur-bearing animals by the use of traps during lawful open seasons on same, nor shall it prevent the Game, Forestation and Parks Commission from issuing such permits as it may be deemed necessary for the killing of animal or bird predators that may endanger game birds or game animals or the domestic property of adjacent landowners."

It is contended by plaintiffs, as ground for reversal, that the trial court erred in holding that this law was not in violation of section 18, art. III of the Constitution, which provides that the legislature shall not pass local or special laws for the protection of game or fish.

Plaintiffs argue that there is no distinction between the areas within and without the area described as to desirability or usefulness for a game refuge; that the selection of the area designated is an arbitrary selection, without reference in any way to any element which would make the lands and river within the area more desirable than the area outside for a game refuge, and therefore the limits are based on a purely arbitrary selection by the legislature.

Plaintiffs insist that the act sets up a provision in paragraph 2 directing the game commission to put up suitable signs showing the boundaries of this refuge, and thereby, in putting these markers on private property, without any remuneration to the owner of the land, it in a way takes private property. If any markers or signs should be attempted to be put on plaintiffs' lands that amounted to a taking or damaging of their property, plaintiffs would, of course, be entitled to compensation. Nothing is here shown, however, which would justify this court in declaring the law unconstitutional, or in granting an injunction on that ground.

It is admitted that this question has never been passed upon by our court, but plaintiffs cite us to the case of *People v. Wilcox,* 237 Ill. 421, 86 N. E. 672. This decision discussed a legislative enactment entitled "An act to encourage the propagation and cultivation and to secure the

protection of fishes in all the waters under the jurisdiction of the state of Illinois." Appellee was convicted, and appealed to the circuit court. It was claimed to be unconstitutional because it excluded Lake Michigan from its operation, thereby conflicting with a clause of the Constitution which prohibits the passage of local or special laws for the protection of game or fish.

The Illinois court said: "It is strongly urged upon our consideration by appellant that the proper protection of fish in our state requires laws of local application, owing to the differences existing in the kinds and habits of the fish found in the different waters of the state. Strong arguments along this line are made, the effect of which is merely to show what might reasonably have been the intention of the framers of our Constitution. But such arguments can have no weight where the intention is clearly expressed by the words used;" and it was held that any classification by which a law is made to affect any territory less than a whole state must be based on a reasonable distinction, and not on an arbitrary one.

Plaintiffs also cite *State v. Scott*, 70 Neb. 685, 100 N. W. 812, and *State v. Hall*, 129 Neb. 669, 262 N. W. 835, in which it was held that a law to be general must operate on all persons and localities of a class brought within the circumstances described.

We find there have been at least four game refuges set up by law in Nebraska. See Comp. St. Supp. 1939, secs. 37-419, 37-423. It is argued by the state that, if this law is held to be local and special legislation and void, it will doubtless affect the validity of the acts establishing these other refuges, upon which the state has expended considerable sums in development work. This argument, which is given some weight by counsel for the state, cannot be considered in passing upon the establishment of this particular game reserve. The purpose of the law is simple, and clearly provides for a permanent closed season in this restricted area along the Platte river.

There is the presumption that a law enacted by the legis-

lature is valid, and that the legislature had before it all of the facts necessary to warrant the provisions inserted in the act.

This method of protecting game has been used in Nebraska for a number of years, otherwise the game would have been gone before this time. Other states have enacted similar laws, and they have been upheld generally.

If this law provided that no one living in Dodge county could hunt or fish in that area, it would naturally be unconstitutional, but this law applies to all of the people of the state of Nebraska, whether they reside in Dodge or Saunders county, or within the area mentioned, or any place without the area in the state. It affects every one exactly the same.

In the prevention of disease, such as anthrax, or bovine tuberculosis, this state permits the department of agriculture to quarantine any single county, or part thereof, in this state (Comp. St. 1929, sec. 54-901) under the general police power, as essential to public safety and health.

An act is general, and not special or local, if it operates alike on all persons or localities of a class, or who are brought within the relations and circumstances provided for, if the classification so adopted by the legislature has a basis in reason, and is not purely arbitrary.

In *Waterman v. Chicago Bridge & Iron Works* (1931) 328 Mo. 688, 41 S. W. (2d) 575, the court said: "If a law affects equally all persons who come within its operation it cannot be local or special within the meaning of the Constitution."

To the same effect is *Arps v. State Highway Commission* (1931) 90 Mont. 152, 300 Pac. 549, in which it is said: "The object of the prohibition of special or local laws is to prevent a diversity of laws relating to the same subject. 1 Lewis' Sutherland on Statutory Construction (2d ed.) sec. 199; *People v. Wilcox*, 237 Ill. 421, 86 N. E. 672. A law is not local or special in a constitutional sense that operates in the same manner upon all persons in like circumstances. 'General laws are those which relate to or bind all within

the jurisdiction of the law-making power, and if a law is general and operates uniformly and equally upon all brought within the relation and circumstance for which it provides it is not a local or special law in the constitutional sense.' *People v. Borgeson*, 335 Ill. 136, 166 N. E. 451; *State ex rel. Garvey v. Buckner*, 308 Mo. 390, 272 S. W. 940; note to *State v. Ellet*, 21 Am. St. Rep. 772."

From a study of these and many other cases, we think the true rule may be stated in this form: A statute is not special or local merely because it prohibits doing a thing in a certain locality. It is, notwithstanding this fact, a general law if it applies to all the citizens of the state, and deals with a matter of general concern.

For a case almost directly in point, we suggest an examination of *Maitland v. People* (1933) 93 Colo. 59, 23 Pac. (2d) 116, in which the supreme court of Colorado said: "It is said that the defendant, who is the owner of a ranch situated within the limits of the game refuge, has a hunting license; that the act makes it a crime for him to kill a deer at any time within the refuge limits, whereas his neighbors just outside the refuge who kill deer during the open seasons designated by our game laws are guiltless of any offense; that the act thus denies to the inhabitants of a certain locality the right to share equally in the privilege enjoyed by the inhabitants of other localities; and therefore that the act is a special act within the meaning of the Constitution. This objection is not sound. All persons, including the defendant, are forbidden to kill, etc., at any time, birds or animals, with certain exceptions, within the limits of a game refuge, and all persons, including the defendant, may kill, etc., at certain times called open seasons, birds or animals outside of such limits. The act applies to all persons alike. It is not special legislation. *Cawsey v. Brickey*, 82 Wash. 653, 144 Pac. 938."

Applying this decision to the case at bar, we see it does not deny plaintiffs equal protection under the law, but all the citizens of Nebraska, including the plaintiffs, are prohibited from hunting in this area.

Plaintiffs seem to contend that those owning land within this refuge, or reserve, have had property rights taken from them in not being able to hunt upon their own property. But it has been uniformly held by courts that there is no property right generally in wild game, for the ownership therein is lodged in the state.

But, notwithstanding this more general rule, the owner of the premises on which wild game is located, if outside a state game refuge, has a qualified interest therein, for without his permission no hunter can go upon the private premises of another and take such game. 24 Am. Jur. 374, sec. 3.

Several other questions are presented by the appellants, which we have considered, but which we do not regard as controlling in the case, and a discussion of them is therefore omitted.

It is a proper exercise of power for the legislature to enact such laws as are necessary to protect, conserve, and replenish the failing resources in game and fish, which were once so plentiful in our state.

The legislature was within the provisions of our Constitution in enacting the law in question, and the trial court was right in sustaining the demurrer of the defendant.

AFFIRMED.

SIMMONS, C. J., dissenting.

The majority "fail to see any merit" in plaintiff's contention that the act authorizes and directs a violation of his constitutional rights.

The act provides: "The Game, Forestation and Parks Commission is directed to place suitable signs showing the boundaries of the refuge and on all roads leading thereinto." Plaintiff contends that this directs a violation of the constitutional provision that "The property of no person shall be taken or damaged for public use without just compensation therefor." Const. art. I, sec. 21.

Certainly the state has no right to enter upon private land and exercise rights of ownership by erecting signs thereon without compensation to the owner. Such an act

is both a taking and a damaging of property. The amount of the damage may not be large, but that is immaterial. If the door is left open slightly, it will be more easily entered the next time by those who desire to take and damage private property. The door is locked by the Constitution. The only key is "just compensation" to the owner. This court has repeatedly enjoined the taking and damaging of private property by public agencies for a public purpose where no provision is made for compensating the owner. It should not refuse to do so here.

To sustain this act is to invite a disregard of constitutional provisions in the future. The observance of constitutional rights and limitations is more important than the propagation of game birds, no matter how much we may favor the latter activity.

ROSE, J., concurs in the dissent.

JOHNSEN, J., concurring.

It may be desirable to eliminate the possibility of any confusion from a reading of the dissenting opinion filed since the majority opinion was adopted.

The majority opinion does not hold, as the dissenting opinion implies, that the game commission is authorized to go onto plaintiff's lands or the lands of any other person, place signs thereon, and deprive the owners of, or interfere with, the use of a portion thereof, no matter how slight, without compensation. On the contrary, the opinion expressly states: "If any markers or signs should be attempted to be put on plaintiffs' land that amounted to a taking or damaging of their property, plaintiffs would, of course, be entitled to compensation."

Equally untenable is the view that the legislature has directed the game commission to violate the Constitution and to attempt to place signs upon private property without compensation. A direction "to place suitable signs showing the boundaries of the refuge and on all roads leading thereinto" is hardly a mandate to go upon private property, place signs thereon, and ignore constitutional rights to compensation. If it is necessary that any such signs be

placed on private property, the legislature has by other means provided funds for carrying on the work of the game commission and has declared that "All funds rendered available by law * * * may be used by it in administering and developing said resources." Comp. St. Supp. 1939, sec. 81-6505.

A simple illustration may serve to demonstrate the fallacy that has been indulged in. If it can be contended that the statute here involved is unconstitutional because it does not specifically instruct the game commission to make payment of any obligation that may arise out of this phase of its activities, the argument must ultimately reach the logical absurdity of contending that a statute, such as that which imposes upon the clerk of the supreme court the duty to have the opinions of the court published in official reports, and to have them printed, is unconstitutional because it does not specifically instruct him to see that payment is made for the printing.