PETER P. CAREY
*vs.*
HECTOR J. CYR
AND
CARLETON DENICO

Kennebec.   Opinion, February 12, 1955.

*Jerome G. Daviau,* for plaintiff.

*Joly & Marden,* for defendant.

SITTING: FELLOWS, C. J., TIRRELL, WEBBER, BELIVEAU, TAPLEY, JJ.   WILLIAMSON, J., did not sit.

WEBBER, J. The plaintiff, a building contractor, brings this action of trover for the alleged conversion of certain building materials. The matter is reported here on an agreed statement of facts. Plaintiff by written contract undertook to erect a building for Bourque-Lanigan Post No. 5, The American Legion, which, for convenience, we may refer to as the "Post." Subsequently plaintiff brought a bill in equity to enforce his lien for labor and materials furnished by him to the Post. In this action he was successful. The parties agree that, "The identical materials included in said lien claim are now the subject of the present suit." When plaintiff ceased operations, work remained to be done and defendants were employed by the Post to complete the building.

The plaintiff in trover must show invasion of his possessory interest. "So the possession of personal property carries with it the presumption of title and enables the possessor to maintain trover against any person except the rightful owner." *Stevens* v. *Gordon*, 87 Me. 564 at 567. "The plaintiff must show that he had a general, or a special property in the goods, and the right to their possession at the time of the alleged conversion." *Giguere* v. *Morrisette*, 142 Me. 95 at 98; *Landry* v. *Mandelstam*, 109 Me. 376. But here the plaintiff shows neither title nor possession. He had furnished and delivered the materials to the Post with the obvious intention of passing title thereby and of receiving payment therefor under either express or implied contract. This intention the plaintiff confirmed by including them in his lien claim. The materials remained on the land of the Post and in its possession. "The question whether a sale has been completed and title to the property involved has passed depends on the intention of the parties at the time the contract was made. * * * * Where such intent is not expressed, as in the instant case, it must be discovered from the surrounding circumstances and from the conduct and

the declarations of the parties." *Wallworth* v. *Cummings,* 135 Me. 267 at 269. It was open to the defendants to show title in the Post at whose direction they were acting. *Clapp* v. *Glidden,* 39 Me. 448.

Moreover, upon these facts, the plaintiff by his assertion of lien must be deemed to have elected his remedy and to have adopted the theory that the property had passed to the Post. This theory would ground the claim of lien or assumpsit but not the tort. The doctrine of election of remedies has been applied in somewhat similar situations. *Ware* v. *Percival,* 61 Me. 391; *Hussey* v. *Bryant,* 95 Me. 49. In *Van Winkle* v. *Crowell,* 146 U. S. 42, plaintiffs who were furnishing machinery filed a mechanics' lien which reached trial stage and was then dismissed by plaintiffs without trial on the merits. The court said at page 50, "The *assertion* of that lien treated the property as the property of (the purchasers) * * * *. It was inconsistent with the existence in the plaintiffs of a title to the property. It treated the sale of the property to (the purchasers) as unconditional." (Emphasis supplied). In *Shonkweiler* v. *Harrington et al.,* 102 Neb. 710, 169 N. W. 258, the court said at page 259 of 169 N. W.: "And so here, if he has waived the tort and collected from the corporation upon the implied contract to pay for the goods, he cannot afterwards allege *against anybody* that he did not sell the goods to the corporation." (Emphasis supplied). See also *Davis* v. *Hauschild,* 243 S. W. (2nd) (Mo.) 956 at 959 where it is said: "The basis of the rule sought to be invoked is that one may not have the aid of the courts upon two *contradictory* principles or theories based upon one and the same set of facts. * * * * 'The basic concept of the doctrine of election is that a party shall not be permitted to insist at different times upon the truth of two inconsistent and repugnant positions, according to the promptings of his own interest, as to first affirm and later disaffirm a contract, or the like.' *Myers* v. *Ross,*

D. C., 10 F. Supp. 409, 411." We do not think the limitations upon the application of the doctrine imposed in such cases as *Wyman* v. *Bowman*, 71 Me. 121; *Clark* v. *Heath*, 101 Me. 530; and *Marsh Bros. & Co.* v. *Bellefleur*, 108 Me. 354, apply here upon the facts before us.

The agreed statement of facts contains the following: "When (plaintiff) and the (Post) severed relations, there was a considerable amount of building material not yet affixed to the building, left on the premises, which said defendants at the request and order of the (Post), proceeded to use for the completion of the building." This nebulous statement does nothing to assist us in deciding this cause. It does not inform us whether any part or all of these items are involved in this trover action—or even what the items consist of. The parties have chosen to rely on an agreed statement of facts in lieu of evidence and must state the facts with such certainty that legal principles may be applied. However, even if we were supposed to infer from this statement that the items alleged to have been converted were not affixed by plaintiff to the real estate, we would not be disposed to reach a different result. The unequivocal statement that they were included by plaintiff in his claim of lien and the admission that they were left on the real estate of the Post and were treated by the Post as by one having possession, title, and the right to control and disposition are consistent only with the theory adopted by the plaintiff himself that both title and possession had passed to the Post before any acts of alleged conversion by these defendants ever occurred. If that be so, the only question remaining unresolved was one of payment by the Post to the plaintiff and this action of trover against third party defendants claiming under the Post would not lie. The complete record of the lien action is before us and there is no suggestion that plaintiff's recovery was in any way reduced because of the non-lienability of any items or of these items

now in suit in particular. But even if there had been such reduction, upon the theory of passage of title and right to possession adopted by plaintiff, his vehicle of attempted recovery should have been assumpsit. The plaintiff cannot now classify as conversion the use made by defendants under the orders and directions of the Post of property which both the plaintiff and the Post have consistently dealt with as belonging to, and possessed by, the Post.

We have not looked beyond the record before us in reaching the foregoing conclusion which effectively decides this case, but we do not deem it improper to draw upon our own intimate familiarity with all of the circumstances solely for the purpose of suggesting that no injustice can or does result from this decision. The plaintiff here was in willful breach of his building contract with the Post. This court has now been called upon to issue its fourth opinion directly resulting from this controversy. The lien claim together with an action of damages brought by the Post against this plaintiff were reviewed by us in *Bourque-Lanigan Post No. 5, The American Legion* v. *Peter P. Carey,* 148 Me. 114. Thereafter, plaintiff brought assumpsit for his own services and this action was reviewed by us in two opinions, both captioned *Peter P. Carey* v. *Bourque-Lanigan Post No. 5, The American Legion, et al.,* and reported in 149 Me. 390 and 150 Me. 62. In the latter opinion we said at page 66, "The combined result of the two previous actions gave the plaintiff, having in mind his unexcused non-performance and breaches of contract, all that the law would allow on the most favorable view of the equities of his position." We think there should be an end of the flood of litigation involving the same parties or those in privity with them arising from the breach by a contractor of his building contract. It seems apparent that the plaintiff and his counsel are unwilling or unable to accept the basic principle that when one is guilty of willful breach of his contract with re-

sulting damage, he cannot ordinarily expect to have *all* the benefits of his contract as though he had performed it. As a result of the first cross actions, plaintiff recovered for what he did, since when he has been seeking by direct and indirect action to recover for what he did not. His failure in subsequent litigation is the penalty of his breach.

*Judgment for defendants, with costs.*