STATE OF MAINE
*vs.*
NORMAN MCKINNON

Lincoln.    Opinion, June 21, 1957.

*James Blenn Perkins,* for plaintiff.

*Niehoff & Niehoff,* for defendant.

SITTING: WILLIAMSON, C. J., WEBBER, BELIVEAU, TAPLEY, SULLIVAN, DUBORD, JJ. WILLIAMSON, C. J., concurs specially by separate opinion and is joined by DUBORD, J.

TAPLEY, J. On report. This is a criminal case originating in the Superior Court, within and for the County of Lincoln. The Grand Jury returned an indictment at the May Term, 1956 charging the respondent, Norman McKinnon, in two counts with (1) hunting game on a game preserve, and (2) having in his possession a firearm, to wit, a shotgun, while on the game preserve. By stipulation, the case is reported to the Law Court on an agreed statement of facts.

### AGREED STATEMENT OF FACTS

1. The respondent admits the commission of the acts alleged in the indictment, to wit, hunting on a game preserve and having in his possession a firearm in the nature of a shotgun, but denies that such acts violated any law of the State of Maine.

2. That the acts were committed on land owned by the respondent in fee; that he was in possession of the land; that of the 285 acres of land which he owns 205 acres are within the Jefferson and Whitefield Game Preserve; that he has 80 acres under cultivation, 25 acres of which are on the game preserve; that all of his buildings, consisting of dwelling house and barns, are situated within the boundaries of the game preserve.

3. The respondent nor any predecessor in title ever consented or agreed that the land of the respondent should be made a game preserve and that he never received any compensation for such use. He has not voluntarily given up or surrendered his right to hunt or carry arms on his own land.

4. The sole issue in the case is whether the provisions of Chap. 37, Secs. 148 and 149, R. S. 1954, as amended, are valid as to this respondent or whether they are unconstitutional in that they violate the provisions of Secs. 6, 16 and 21 of Art. I of the Constitution of Maine.

Sec. 148 of Chap. 37, R. S. 1954, reads:

> **"Hunting in game preserves; hunting or possession of firearms within limits of game preserves.—** No person shall at any time hunt, trap, chase, catch, kill or destroy any wild birds or wild animals or have in his possession firearms of any description within the limits of any game preserve or closed territory except as provided in this chapter, and except that the commissioner is authorized to regulate the trapping of wild animals thereon and to use such means as may seem necessary to exterminate vermin of any description in all game preserves and sanctuaries and in any other localities where damage is being done."

Sec. 149 of Chap. 37, R. S. 1954, in part reads:

> **"Game preserves and sanctuaries.—** No person shall, except as herein provided, at any time, trap, hunt, pursue, shoot at or kill any wild animal or any game or other wild birds within the following described territories: - - - -."

The amendment to Sec. 149, being Chap. 237, P. L. 1955, creates the game preserve designated as Jefferson and Whitefield. The Legislature has established the Jefferson and Whitefield Game Preserve by legislative enactment and has regulated its use by prohibiting any person to hunt or to have in his possession firearms of any description within its limits.

The respondent, although admitting the acts of hunting and having in his possession a firearm while on the game preserve, proposes that these acts in so far as he is concerned do not violate the law and, for argument, says the

legislative acts creating the game preserve and prohibiting hunting and possession of firearms are unconstitutional. The reasons assigned for his contentions are: (1) that the State by the creation of a game preserve on his land has taken his property without just compensation; (2) that he has been denied the right which the Constitution gives him of bearing arms or keeping arms on his own property, and he further says that he is the object of discrimination in that he is not permitted to have possession of firearms for potential use for protecting crop and orchard damage on his property, as permitted by Chap. 37, Sec. 94, sub-title I, R. S. 1954.

We first consider the subject of taking respondent's land without just compensation. The animals which are objects of the hunt are naturally wild. There is no right of individual ownership as they are property of the sovereignty. There can be no question of the right of the State to conserve, protect and regulate its wild life. In *State* v. *Snowman*, 94 Me. 99, on page 111, the court says:

> "The fish in the waters of the state and the game in its forests belong to the people of the state in their sovereign capacity who, through their representatives, the legislature, have sole control thereof and may permit or prohibit their taking." - - - - -

> "When the state permits the taking of fish and game, it has full power and authority to regulate such taking. It may impose such conditions, restrictions and limitations as it deems needful or proper."

The results of proper and efficient wild life conservation in large measure promote the economic welfare and well-being of the citizenry of the State. One of the most important and effective means of wild life conservation is the medium of the game preserve established and regulated by legislative enactment. The Legislature has designated an area named Jefferson and Whitefield Game Preserve to be one where

the laws pertaining to the prohibition of hunting and possession of firearms are applicable. It happens in this case that the respondent owns a part of the land within the preserve, dwells there and cultivates a portion of the soil. His land is being used without his consent and without compensation, and of this he complains.

The establishment of the game preserve by the State does not constitute a "taking" within the meaning of the word as used in its constitutional sense. *Opinion of the Justices,* 103 Me. 506, treats of the right of the State to regulate, without compensation to the owner, and cutting or destruction of trees growing on privately owned, wild or uncultivated land in order to prevent injurious droughts and to preserve and maintain natural water supplies. On page 511, the justices had this to say:

> "Regarding the question submitted in the light of the doctrine above stated (being that of Maine and Massachusetts at least) we do not think the proposed legislation would operate to 'take' private property within the inhibition of the Constitution. While it might restrict the owner of wild and uncultivated lands in his use of them, might delay his taking some of the product, might defer his anticipated profits, and even thereby might cause him some loss of profit, it would nevertheless leave him his lands, their product and increase, untouched, and without diminution of title, estate or quantity. He would still have large measure of control and large opportunity to realize values. He might suffer delay but not deprivation. While the use might be restricted, it would not be appropriated or 'taken.' "

This opinion of the justices sanctions the action of the State in promoting conservation by imposing upon a land owner the necessity of submission to rules and regulations in the use of his land. The reasoning of this opinion is most applicable to the instant case. The law authorizing the State

to establish game preserves on the property of a private owner does not take from him any title, dominion of ownership or essential use. These elements of ownership remain inviolate. The legislative act does nothing more than prohibit hunting and possession of firearms within the preserve without taking any of the essentials of ownership. The State was within its sovereignty powers to establish the game preserve without violating any constitutional rights of the owner by its establishment. See *Cushman* v. *Smith,* 34 Me. 247; *Bauer* v. *Game, Forestation and Parks Commission, et al.,* 293 N. W. 282 (Neb.); *Platt* v. *Philbrick,* 47 P. (2nd) 302 (Cal.).

It is well at this point to consider the legality of the respondent's position from the standpoint of the charges against him. The first count of the indictment alleges that he hunted game on the Jefferson and Whitefield Game Preserve. There is no factual problem as the respondent admits he did hunt game on the preserve but says in doing so he violated no valid law in so far as he was concerned. He argues that as he owns the property he has a legal right to hunt game thereon even though it also is a game preserve. It has been demonstrated that the State has the authority to regulate the wild life of which it is the owner. This right of regulation applies to all land contained within the borders of the State, whether privately or publicly owned. There is nowhere to be found in the Statutes that the State gives the right or privilege of a land owner to hunt game on his own property excepting he may hunt without a license on land where he is actually domiciled and *which is exclusively used for agricultural purposes* (Chap. 37, Sec. 73, sub-title 1, R. S. 1954) or he may kill deer on his own land when crop and orchard damage is done by them (Chap. 37, Sec. 94, sub-title 1, R. S. 1954).

The agreed statement of facts do not state that this respondent's land was used exclusively for agricultural pur-

poses nor that his activities concerned the killing of deer who were causing crop or orchard damage, so the acts of the respondent do not come within the provisions of these sections. The respondent has admitted hunting game on the preserve, as alleged in the first count of the indictment, and has failed to show the statute, upon which the prosecution is based, is unconstitutional or otherwise invalid as to the charge against him of game hunting.

The respondent attacks the second count of the indictment which alleges that he "did then and there have in his possession a firearm, to wit, a shotgun, while on the Jefferson and Whitefield Game Preserve - - - -." He admits the act of possession of a firearm, to wit, a shotgun, as stated in the indictment, but he says in defense that the law upon which the count in the indictment was based is unconstitutional as it violates Art. I, Sec. 16 of the Constitution of Maine: "Every citizen has a right to keep and bear arms for the common defense; and this right shall not be questioned." The respondent contends the law prohibiting persons from possessing firearms on a game preserve is not applicable to him as he, being the owner and domiciled on the land, is entitled under this constitutional provision to have firearms in his possession.

The court is not fully informed as to the detailed facts concerning possession of the shotgun as the agreed statement of facts goes no further than to advise the court, "The Respondent did the Acts alleged in the indictment - - - - and which acts were done on the land owned by the Respondent in fee." The indictment charges, by separate counts, two distinct offenses, one, hunting on a game preserve, and the other, unlawful possession of a firearm on a game preserve. There appears to be no legal reason why the respondent cannot be convicted of both offenses if the facts support the alleged violations. See State v. Beaudette, 122 Me. 44. The facts submitted bearing on possession are very meager.

The only available facts are (1) an indictment charging hunting and possession and (2) admission on part of respondent that he did hunt and did have in his possession a gun. Does the respondent mean that he had possession of the gun as part of the act of hunting? Does he admit possession of the gun under circumstances which would be naked possession and not connected with hunting activity? Was the respondent charged with possession of the firearm while it was contained within the confines of his own home? The answers to these questions are important to know before a determination can be made as to the respondent's legal and constitutional rights under the second count. The factual aspect of this case in respect to the second count is woefully inadequate. If the possession of this firearm was for the purpose of and used in hunting, then it could not possibly come within the constitutional rights of the respondent in bearing arms for the common defense while, on the other hand, if possession was not a part of the act of hunting, the constitutional rights of the respondent could be involved. The facts presented to us do not permit of a decision as to the second count. In the case of *State* v. *Corriveau*, 131 Me. 79, at page 85, the court said:

"The Law Court is asked to say whether he is guilty or innocent, and that upon what it holds to be but a partial statement of the facts essential to determination.

This we decline to do."

See also *Carey* v. *Cyr, et al.*, 150 Me. 405.

The order is,

*Judgment for the State as to the first count in the indictment. Report discharged as to the second count.*

CONCURRING OPINION

WILLIAMSON, C. J.   I concur in the result.  The defendant has suffered no loss of rights under the Constitution of Maine either in the creation of the game preserve or in the prohibition against hunting.  Further, the report is not sufficiently complete for decision on the charge of possession of a shotgun on the preserve.

It is a well settled principle of judicial administration to refrain from passing on the constitutionality of legislation unless compelled to do so by the case.  Great rights rest upon Section 16 of our Declaration of Rights, which reads:

"Every citizen has a right to keep and bear arms for the common defense; and this right shall never be questioned."

I file this concurring opinion only to make it plain beyond any doubt that I have not deemed it necessary to consider the application of Art. I, Sec. 16 of our Constitution to the problem presented by the record in this case.