STATE OF MAINE
KENNEBEC, SS.

SUPERIOR COURT
LOCATION: Augusta
Docket No. CV-15-168

STEPHEN DOANE, M.D.,

        Plaintiff,

v.

MAINE DEPARTMENT OF HEALTH
& HUMAN SERVICES,

        Defendant.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

**ORDER ON MOTION TO DISMISS
AND MOTION FOR SUMMARY
JUDGMENT**

I.      Background

Plaintiff Stephen Doane, M.D. is a licensed physician by the State of Maine
Board of Licensure in Medicine (the "Board"). His primary practice is at
PrimeCare Physicians in Biddeford, which is affiliated with Southern Maine
Medical Center. His last employer, Webber Hospital, enrolled Dr. Doane in
Maine's Medicaid program ("MaineCare"), allowing reimbursement by the
Department of Health and Human Services ("DHHS") for care provided. The
enrollment documentation between MaineCare and Webber Hospital ("Provider
Agreement") incorporates 10-144 C.M.R. Ch. 101, sub-ch. I, that provides DHHS
with the authority to terminate a rendering provider from the MaineCare
program for: "1) violating regulations or ethical codes governing professional
conduct, and 2) failing to meet State and federal standards for participation, and
3) being formally reprimanded or censured by a peer association for unethical
practice." 10-144 C.M.R. ch. 101, sub-ch. I. The Provider Agreement provides that

1

Webber Hospital will not employ individuals excluded from the MaineCare program.

On March 10, 2015, Dr. Doane was issued a letter by the Board stating that Dr. Doane had demonstrated incompetence in the treatment of a patient who died of drug intoxication. The Board renewed Dr. Doane's license, but censured him, imposed terms of probation and required a practice monitor to review all cases in which Dr. Doane writes prescriptions for more than one week of controlled substances. (Mot. Dismiss Ex. B at 32-33.) As a result of the finding of the Board, on April 9, 2015, DHHS issued a letter to Dr. Doane at Webber Hospital stating that he was no longer eligible to participate in Maine's Medicaid program ("MaineCare").[1] The letter explains "The general practical effect of this restriction is to prohibit employment in any capacity by a provider that receives reimbursement, indirectly or directly, from MaineCare or other Medicaid programs." MaineCare Exclusion Ltr. April 9, 2015.

Dr. Doane sought informal review of the determination. In its Final Informal Review Decision dated September 11, 2015, DHHS affirmed its earlier determination. Dr. Doane has since sought administrative appeal of the determination in addition to pursuing the current action. In this action, Dr. Doane seeks a declaration by the Superior Court that DHHS's exclusion of Dr. Doane from the MaineCare program constituted a revocation of a license that, pursuant to 4 M.R.S. § 152(a) and 5 M.R.S. § 10051(2), can only be revoked by the Maine District Court.

---

[1] At the time the letter was issued, Dr. Doane's primary practice was at PrimeCare Physicians in Biddeford, which was associated with Southern Maine Medical Center. Dr. Doane was no longer employed by Webber Hospital.

2

This is the second time in recent years that this issue has come before the Kennebec County Superior Court. In *Corrado v. DHHS*, KENSC-CV-2015-084(Me. Super. Ct., Ken. Cty., 2015), plaintiff Corrado similarly seeks a determination that his approval for the MaineCare program be declared a license for purposes of revocation, thereby requiring DHHS to bring the matter before the District Court. In that case, the plaintiff is a pharmacist who was reprimanded by the Board. Following the reprimand, DHHS issued a letter excluding Corrado from the MaineCare program. Corrado brought an action for declaratory relief similar to the action brought in this case. Because Corrado filed the action for declaratory relief simultaneously to filing for administrative appeal, the Court stayed the case pending determination by DHHS.

In the current matter, DHHS has moved the court for dismissal and Dr. Doane has moved the Court for summary judgment.

II. Discussion

Defendant DHHS moves to dismiss Plaintiff Doane's Complaint for declaratory relief. In his Complaint, Dr. Doane asserts that DHHS terminated his participation in the MaineCare program and disqualified him from receiving reimbursement for professional services rendered to any participant in a medical assistance program administered by DHHS. (Pl.'s Compl. ¶ 5.) Dr. Doane contends that this action constitutes a revocation of a license that, pursuant to 4 M.R.S. § 152(a) and 5 M.R.S. § 10051(2), can only be done by the Maine District Court. (Pl.'s Compl. ¶ 10.)

DHHS argues that Dr. Doane's Complaint should be dismissed because DHHS did not revoke any "license" held by Dr. Doane or engage in any "licensing" action. Instead, DHHS contends that it simply terminated a contract

3

it had entered into with Dr. Doane. Dr. Doane opposes this motion and simultaneously moves for summary judgment arguing that DHHS's revocation of Dr. Doane's ability to participate in, and receive reimbursement from, MaineCare constitutes a licensing action and has been recognized as such by federal courts.

For the reasons discussed below, the Court denies DHHS's Motion to Dismiss and grants Dr. Doane's Motion for Summary Judgment.

a. Standard of Review

On review of a motion to dismiss for failure to state a claim, the Court accepts the facts alleged in the complaint as true. *Saunders v. Tisher*, 2006 ME 94, ¶ 8, 902 A.2d 830. The Court "examine[s] the complaint in the light most favorable to plaintiff to determine whether it sets forth elements of a cause of action or alleges facts that would entitle the plaintiff to relief pursuant to some legal theory." *Doe v. Graham*, 2009 ME 88, ¶ 2, 977 A.2d 391 (quoting *Saunders*, 2006 ME 94, ¶ 8, 902 A.2d 830). "For a court to properly dismiss a claim for failure to state a cause of action, it must appear 'beyond doubt that [the] plaintiff is entitled to no relief under any set of facts that might be proven in support of the claim.'" *Dragomir v. Spring Harbor Hosp.*, 2009 ME 51, ¶ 15, 970 A.2d 310 (quoting *Plimpton v. Gerrard*, 668 A.2d 882, 885 (Me. 1995)).

Summary judgment, on the other hand, "is appropriate if the record reflects that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law." *Dussault v. RRE Coach Lantern Holdings, LLC*, 2014 ME 8, ¶ 12, 86 A.3d 52 (quoting *F.R. Carroll, Inc. v. TD Bank, N.A.*, 2010 ME 115, ¶ 8, 8 A.3d 646). "A material fact is one that can affect the outcome of the case, and there is a genuine issue when there is sufficient evidence for a fact-

4

finder to choose between competing versions of the fact." *McIlroy v. Gibson's Apple Orchard*, 2012 ME 59, ¶ 7, 43 A.3d 948 (quoting *N. E. Ins. Co. v. Young*, 2011 ME 89, ¶ 17, 26 A.3d 794).

In the present case, there are no genuine issues of material fact. Instead, the parties' competing motions address the legal question of whether DHHS's exclusion of Plaintiff from the MaineCare program constitutes the revocation of a "license" within the meaning of 5 M.R.S. § 8002(7) and 4 M.R.S. § 152(9).

b. Authority

The Maine Administrative Procedures Act ("APA") defines "[l]icensing" as "the administrative process resulting in the grant, denial, renewal, revocation, suspension or modification of a license." 5 M.R.S. § 8002(6). A "license" in turn, "includes the whole or any part of any agency permit, certificate, approval, registration, charter or similar form of permission required by law which represents an exercise of the state's regulatory or police powers." 5 M.R.S. § 8002(7). 4 M.R.S. § 152(9) confers upon the Maine State District Court "exclusive jurisdiction upon complaint of an agency…to revoke or suspend licenses issued by the agency." *See also* 5 M.R.S. § 10051(2) ("the District Court has exclusive jurisdiction upon complaint of any agency…to revoke or suspend licenses issued by the agency…").

c. Motion to Dismiss

DHHS argues in its motion to dismiss that Dr. Doane's Complaint fails as a matter of law because DHHS's action does not constitute the revocation of a license. DHHS contends that participation in MaineCare is purely voluntary, not required by law, and, when DHHS ends a provider's participation, it is not exercising police or regulatory power, which is an element of a "license"

5

pursuant to 5 M.R.S. § 8002. Instead, it is simply enforcing the terms of a contractual agreement. DHHS argues that Webber Hospital entered into the Provider Agreement and enrolled Dr. Doane as a rendering provider. Therefore, Dr. Doane is contractually bound to the terms of the Provider Agreement.

Dr. Doane contests DHHS's assertion that this is merely a contract dispute on two grounds. First, Dr. Doane points out that the letter of termination, which was sent to Webber Hospital rather than to Dr. Doane personally,[2] did not mention any contract, but rather cited to 10-144 C.M.R. Ch. 101, sub-ch. I. Citing to the regulation rather than to contract language suggests that DHHS was seeking to enforce the regulation rather than a contract when noticing Dr. Doane of his termination from the MaineCare. Second, the Provider Agreement that DHHS points to is between Webber Hospital and DHHS. Dr. Doane is not party to the contract. Dr. Doane did not enter into an agreement with DHHS that could be enforced.

Finally, DHHS argues that because Dr. Doane is in the midst of the administrative process, waiting for the issuance of a determination by DHHS, there is no final agency action for review by the Court, as is required by M.R. Civ. P. 80C. DHHS concedes that this question is "not relevant to disposition of this Motion to Dismiss," yet argues that the right to judicial review does not attach until after a petitioner has exhausted the administrative process. (Def. Mot. Dismiss p. 8.)

The Court finds that, viewing the facts in the light most favorable to Dr. Doane, Dr. Doane has stated a claim for which relief may be granted. According

---

[2] As noted in footnote 1, Dr. Doane no longer worked at Webber Hospital at the time the letter was issued.

6

to Black's Law Dictionary, a contract is "An agreement between two or more parties creating obligations that are enforceable or otherwise recognizable at law" Contract, *Black's Law Dictionary* (9th ed. 2009). Additionally, "the formation of a contract requires a bargain in which there is a manifestation of mutual assent to the exchange and a consideration." Restat 2d of Contracts, § 17 (2nd 1981). According to the facts as presented, Dr. Doane did not enter into any agreement with DHHS. There was no mutual assent of the parties and there were no agreed upon obligations. Because Dr. Doane did not enter into an agreement with DHHS, Dr. Doane's termination from the MaineCare program could not have been the exercise of contractual power afforded to DHHS by a breach of contract by Dr. Doane. Dr. Doane's claim that DHHS revoked an approval or "license" as defined by the APA, in violation of 4 M.R.S. § 152(9), is a viable claim when viewing the facts as stated in Dr. Doane's complaint as true.

"The doctrine of exhaustion of administrative remedies requires a party who seeks an administrative remedy or who challenges an administrative action to pursue that remedy or challenge to a conclusion before the administrative agency prior to initiating action in the courts." *Town of Levant v. Seymour*, 2004 ME 115, ¶ 13, 855 A.2d 1159 (citations omitted). The doctrine of exhaustion, is not always required where the issue before the court is the interpretation of statute. See *Annable v. Board of Environmental Protection*, 507 A.2d 592, 595 (1986). "Where the interpretation of a statute is at issue, we have in the past recognized that a plaintiff may maintain a declaratory judgment action even though an alternative remedy may be available to him." *Id.*, citing *Berry v. Daigle*, 322 A.2d 320, 325 (Me. 1974); *King Resources Co. v. Environmental Improvement Comm.*, 270 A.2d 863, 867-68 (Me. 1970). Because the exhaustion doctrine does not necessarily bar Dr.

7

Doane from seeking declaratory relief, and because the declaratory relief sought is the interpretation of statute, Dr. Doane has stated a claim for which relief may be granted.[3] The Court denies DHHS's Motion to Dismiss.

### d. Summary Judgment

Dr. Doane seeks declaration by the Court that the ability to participate in the MaineCare program constitutes a license pursuant to the APA. According to the APA, a license "includes the whole or any part of any agency permit, certificate, *approval*, registration, charter or similar form of permission required by law which represents an *exercise of the state's regulatory or police powers*." 5 M.R.S. § 8002(7) (emphasis added). Dr. Doane argues that DHHS's determination to allow a doctor to participate in the MaineCare program as a rendering provider is an "approval" according to the APA and that the reasoning used to exclude Dr. Doane from the program is an "exercise of the state's regulatory or police powers". Because the "license" to participate in the MaineCare program is not governed by exceptions noted in 4 M.R.S. § 152(9) or 5 M.R.S. § 10051, it may only be taken away from a physician by the District Court.

DHHS argues that, not only is the ability to participate in MaineCare a matter of contract rather than license, it is not a license because no physician is required to participate in MaineCare and Dr. Doane is free to use his medical

---

[3] The Court has determined that justice requires the parallel proceedings of the administrative appeal and the action for declaratory judgment in this case where it was not required in the *Corrado* case for two reasons. First, because unlike in *Corrado*, in which the plaintiff individually entered into a provider agreement with DHHS, in this case Dr. Doane has not contracted with DHHS. Secondly, it has now become clear to the Court that this is a recurring question of law in need of determination. Therefore, the Court determines that parallel proceedings are appropriate.

license as bestowed on him by the Board to practice medicine outside of the MaineCare program.

Dr. Doane further replies that DHHS's assertion that Dr. Doane's freedom to engage in the practice of medicine outside of the MaineCare program proves that the ability to participate in MaineCare is not a license is not persuasive for three reasons. First, by excluding Dr. Doane from MaineCare, DHHS is trying to perform a function that falls squarely within the historical scope of the State's police power, i.e. providing for the public health and safety. Second, even if Dr. Doane were free to engage in the practice of medicine, that would not change the character of DHHS's conduct. This is because the government may, and often does, regulate conduct without prohibiting it entirely. Third, the notion that Dr. Doane remains free to engage in the practice of medicine is a fiction because, as a practical matter, the MaineCare program is a dominant force in Maine's healthcare market and it is inconceivable that any hospital could operate in Maine unless it did business with MaineCare.

In the current case, DHHS has interpreted section 8002 of the Administrative Procedures Act to be inapplicable to Dr. Doane's ability to participate in the MaineCare program. Despite a process by which DHHS reviews a doctor's record, unilaterally decides whether or not he may continue to participate in the program based upon regulation, and reviews and solely decides upon letters for reinstatement after a doctor has been terminated from the program, DHHS contends that a doctor's ability to practice is a contract right, not "the whole or any part of any agency permit, certificate, approval, registration, charter or similar form of permission required by law which

9

represents an exercise of the state's regulatory or police powers." 5 M.R.S. § 8002(7).

Here, the Court finds that DHHS's termination of Dr. Doane's ability to participate in the MaineCare program constitutes a revocation of a license within the meaning of 5 M.R.S. § 8002(7) and 4 M.R.S. § 152(9) because the ability to be reimbursed for care of participant patients constitutes a form of permission, similar to a license, that is required by law and represents an exercise of the state's regulatory or police powers. This is because the Maine APA broadly defines the term "license" in a manner that is similar to the "extremely broad" definition of "license" in 5 U.S.C. § 551(8). *See Air North America*, 937 F.2d 1427, 1437 (9th Cir. 1991). This broad definition indicates that the Legislature intended to cast a wide-net concerning what constitutes a license. This broad definition is contrary to DHHS's attempt to narrow the definition of "license" to exclude contracts from the definition, without regard to their context.

The plain language of 5 M.R.S. § 8002(7) identifies any type of "approval … required by law which represents an exercise of the state's regulatory or police powers" as a license. 5 M.R.S. § 8002(7). This language is similar to the Federal Administrative Procedure Act defining "license" as including "the whole or a part of an agency permit, certificate, approval, registration, charter, membership, statutory exemption or other form of permission." 5 U.S.C. § 551(8). Not many courts have addressed whether the authority to participate in, and be reimbursed by, a government-funded medical assistance program constitutes a license. However, this question has arisen in the bankruptcy context, wherein the Bankruptcy Code prohibits governmental entities from revoking or suspending any "license, permit, charter, franchise, or similar grant" of authority to a debtor

solely because he is insolvent. 11 U.S.C. § 525(a)). Within this context, several courts have found that section 525 is applicable to Medicare agreements. See *In re Psychotherapy and Counseling Center, Inc.*, 195 B.R. 522, 529-530 (Bankr. D.D.C. 1996); *In re St. Mary's Hospital*, 89 B.R. 503, 504 (Bankr. E.D. Pa. 1988); *Health Care Fin. Admin. v. Sun Healthcare Group, Inc. (In re Sun Healthcare Group, Inc.)*, 2002 U.S. Dist. LEXIS 17868 *1 (D. Del. Sept. 4, 2002)).)

Furthermore, the limited case law addressing analogous situations indicates that the Provider Agreement fits within the broad definition of "license." Pertinently, *In re Sun Healthcare Group, Inc.* found that Medicare agreements constituted "licenses" under 11 U.S.C. § 525. 2002 U.S. Dist. LEXIS 17868 *14. In that case, Sun Health and certain of its subsidiaries filed a petition for Chapter 11 bankruptcy. *Id.* at *1. Prior to the bankruptcy petition, one of Sun Health's subsidiaries was suspended from participation in the Medicare and Medicaid programs for failure to comply with regulations. *Id.* at *2. The subsidiary was told it could be reinstated if it cured the violations, but before it could cure its Medicaid obligations, Sun Health filed for bankruptcy and triggered the automatic stay provisions. *Id.* Subsequently, Sun Health moved for an order compelling the Health Care Financing Administration ("HCFA") to recertify the subsidiary for participation in the Medicare program or to authorize Sun Health to pay prepetition debts owed to HCFA in connection with the subsidiary. *Id.* at *2-3. A primary issue in resolving Sun Health's motion was whether the Medicaid Provider Agreement constituted a "license" or "other similar grant" pursuant to 11 U.S.C. § 525(a). *See id.* at *12-17. Section 525(a) provides, in pertinent part, that a governmental unit may not "deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar

11

grant to...a person that is or has been a debtor under this title [11 U.S.C.S. §§ 101 et seq.][.]" 11 U.S.C. § 525(a). This language, while not identical, is similar to the Maine APA's definition of "license."

In its analysis, *In re Sun Healthcare Group, Inc.* explained that "[t]here is very little case law addressing exactly what constitutes a license" under 11 U.S.C. § 525. 2002 U.S. Dist. LEXIS 17868 *12. It noted, however, that the government had not cited, and the court did not find, "any case wherein a court has explicitly stated that Medicare and Medicaid agreements are *prima facie* exempt from the requirements of section 525." *Id.* at 14. On the other hand, "several courts have found that section 525 is applicable to Medicare agreements, and have applied its provisions accordingly." *Id.* (citing *See In re Psychotherapy and Counseling Center, Inc.*, 195 B.R. 522, 529-530 (Bankr. D.D.C. 1996) (applying section 525 in Medicare and Medicaid contexts); *In re St. Mary's Hospital*, 89 B.R. 503, 504 (Bankr. E.D. Pa. 1988) (applying section 525 to Medicare agreement)). *In re Sun Healthcare Group, Inc.* then explained that "the Medicare provider agreements at issue authorized the providers to pursue an endeavor, namely caring for elderly patients" and that while it is "possible for a provider to care for Medicare patients in the absence of a provider agreement, without the agreement, they would receive no compensation for the services." *Id.* at 16. "Consequently, without a provider agreement, providers would be forced to provide Medicare services free of charge." *Id.* As a result, the court found that "although the Medicare provider agreement may not be a license in the strictest sense of the word, it is clearly similar to a license for section 525 purposes." *Id.*

Similar to Sun Health in *In re Sun HealthCare Group, Inc.*, the Plaintiff in this case cannot participate in the MaineCare program absent consideration and

12

approval by DHHS. Accordingly, DHHS's determination to allow a rendering provider to participate in MaineCare constitutes a form of permission, required by law.

Finally, it is clear that DHHS's decision to permit a rendering provider to enter into a provider agreement represents an exercise of the state's regulatory or police powers. This is because the State's traditional police power includes "the authority to provide for the public health, safety, and morals...." *Barnes v. Glen Theatre*, 501 U.S. 560, 562 (1991); *see also In re Spring Valley Dev.*, 300 A.2d 736, 748 (Me. 1973) (finding it indisputable that limitations on the use of property for the purpose of protecting the quality of air, soil and water from unreasonable destruction "for the protection of the public health and welfare is within the police power"); *State v. Corriveau*, 131 Me. 79, 84-85, 159 A. 327 (1932). In this case, it is undisputed that DHHS terminated his participation in the MaineCare program due to public health concerns, i.e. the death of a patient by overdose and subsequent reprimand by the Board. Furthermore, the State explains its policy as necessary to ensuring the quality of the medical services provided, further noting that "all states' Medicaid agencies are required by federal rule to 'have administrative procedures in place that enable it to exclude an individual or entity for any reason for which the Secretary [of Health and Human Services] could exclude such individual or entity...'" (Mot. Dismiss p. 7, fn 6.) What DHHS describes herein is police power rather than the enforcement of contractual rights. Accordingly, the Court grants the Plaintiff's motion for summary judgment because DHHS's actions constitute a revocation of a license that can only be done by the Maine District Court pursuant to 5 M.R.S. § 8002(7) and 4 M.R.S. § 152(9).

13

III.     Conclusion

The Court denies DHHS' Motion to Dismiss.

The Court grants Plaintiff's Motion for Summary Judgment.

The Clerk is directed to incorporate this Order into the docket by reference

in accordance with M.R. Civ. P. 79(a).

DATE:     6 | 30 | 16

Michaela Murphy
Justice, Superior Court