155 So.2d 790 (1963)
Julian ALFORD, as Chairman, T. Payne Kelly, Jr., Charles L. Hoffman, Thomas W. McBroom and Don Southwell, as Members of and constituting the Game and Fresh Water Fish Commission of the State of Florida; A.D. Aldrich, as Director of said Commission; Mack Hodges and Joe Shepard, Appellants,
v.
K.O. FINCH, Howard P. Rives, Charles A. Johnson, Jr., R-J Farms, Inc., a Florida corporation, Levy Land Co., Inc., a Florida corporation, Appellees.
No. 31753.
Supreme Court of Florida.
June 28, 1963.
Rehearing Denied September 11, 1963.
*791 Richard W. Ervin, Atty. Gen., Joseph C. Jacobs, Tallahassee, and Sam Spector, Miami, for appellants.
Howard P. Rives (of Cooper, Rives & Baskin), A.D. Finch of Finch & Mosley, Clearwater, for appellees.
CALDWELL, Justice.
This cause is before us on appeal from a decree of the Circuit Court for Leon County holding invalid certain orders of the Game and Fresh Water Fish Commission. The jurisdiction of the Court has been properly invoked under Fla. Const., Art. V, § 4(2), F.S.A.
The appellees, plaintiffs below, the owners of 700 acres of land, brought suit seeking a declaratory decree and supplemental relief, contending that the defendant, appellant here, had deprived them of their constitutional right to equal protection of the laws and, without due process of law, had taken their private property for public use without just compensation.
The facts are that certain third person owners had agreed with the Commission that their lands, not here in question, could, for a period of 25 years, be designated a "game management area," within which such owners and the public could take game, provided the Commission "set aside as a breeding ground throughout the term of this agreement" certain other lands, including the land of the appellees, upon which neither the appellees nor the public could shoot.
The record indicates that, pursuant to the agreement with the aforesaid third person owners, the Commission promulgated an order creating the game refuge but the text does not appear and, other than the conclusion that the order did incorporate the land of the appellees in said refuge and did prohibit hunting thereon for an indefinite period, perhaps 25 years, we have no information. It seems clear, however, that the Commission, without the consent of or compensation to the appellee owners of the 700 acre tract now involved, ordered that land closed to all hunting and trapping. The trial judge found, inter alia, that the orders closing the property of the appellees were invalid because "they deny to the plaintiffs the equal protection of the laws, deprive plaintiffs of property without due process of law and have the effect of taking property of plaintiffs for public use without just compensation, all contrary to the provisions of both state and federal constitutions; the property rights which have been unconstitutionally affected are those of the landowner to hunt game on his land, subject to lawful regulation, which accrues as an incident of ownership of the soil."
Recognizing the power of the Commission to fix open and closed seasons and otherwise regulate the taking of game, the trial judge found that regulations which impose burdens on some but not upon other citizens like situated, with no just basis for the classification, constitute a denial of equal protection of the law; that the orders complained of here denied the plaintiffs *792 (appellees) privileges which neighbors in the area enjoy, and held:
"[T]he effect is the destruction of plaintiffs' rights to hunt on their land in order that others having rights or privileges in nearby lands of substantially the same habitat qualities may better enjoy their hunting privileges. This is not a reasonable basis for discrimination and serves to deny plaintiffs equal protection of the law."
The court further held that the indefinite prohibition of hunting on the lands of the plaintiffs (appellees), under the facts of the case, constituted "a taking of private property for public use and since no compensation has been paid is itself a violation of Sec. 12, Declaration of Rights, and Sec. 29, Art. XVI, Fla. Const., which prohibits deprivation of property without due process of law and taking of private property without just compensation."
This cause necessitates the determination of whether, under Sec. 30 Art. IV, of the Florida Constitution,[1] the Commission has the power to close to hunting for a period of years, without consent or compensation, the private property of one owner, leaving unaffected in the same vicinity the private property of others. The Court can take judicial notice of the fact that vast acreages are maintained in Florida by owners for the principal, if not the sole, purpose of preserving, protecting and shooting game thereon.
The exclusive common law right of a landowner to take game on his land, known as property ratione soli,[2] was defined by Lord Westberry in an early English case[3] as "the common law right which every owner of land has to kill and take such animals ferae naturae as may from time to time be found on his land." This right has been recognized throughout the history of common law, with one exception: Following the Norman Conquest the King contended that he was lord paramount of the field, possessed of the right to the universal soil and of the exclusive right to take the game, but the irate landowners, vehemently objecting, quickly and decisively recaptured their rights and reestablished the common law.[4]
American cases are in harmony with the common law rule.[5] In Hanson v. Fergus Falls National Bank & Trust Co.,[6] the Minnesota court said:
"Summarized, the right of hunting on premises is an incorporeal right growing out of the soil, referred to in law as *793 a profit a prendre, and may be segregated from the fee of the land and conveyed in gross to one having no interest or ownership in the fee, and when so conveyed it is assignable and inheritable."
In Hamilton v. Williams[7] this Court said:
"Wild game is vested in the State as trustee for all its citizens with full power and authority in the State to regulate and protect. * * *
"The owner of the soil, however, has special and qualified interest in the wild game while it is thereon. Such special and qualified interest is a property right incident to his ownership of the soil. That property right is the right to exclusively hunt such wild game upon the soil, subject to any lawful regulation by the State. * * *
"While it is true this court held as contended by petitioner in the case of State [ex rel. Spencer] v. Bryan, 87 Fla. 56, 99 So. 327, 329, `The power and discretion of the Legislature to control * * * the subject of hunting game is not limited by the organic law, and the subject regulated may be as restricted in the manner and extent as the Legislature deems advisable,' nevertheless such holding in no sense of the word meant that the Legislature or any citizen could deprive another citizen of a vested property right such as defined above except by due process of law." (Emphasis added)
In a later case,[8] this Court said the Legislature could provide by law for the conservation of game, "where such laws do not deny to any one having rights in the premises the due process of law or the equal protection of the laws that are guaranteed to all persons by the state and federal Constitutions."
The appellant has confused the ownership of the game in its wild state with the ownership of the right to pursue the game. The landowner is not the owner of the game, ferae naturae, but he does own, as private property, the right to pursue game upon his own lands. That right is property, just as are the trees on the land and the ore in the ground, and is subject to lease, purchase and sale in like manner. The right to hunt on another's premises, the right of venery,[9] is an interest in real estate in the nature of an incorporeal hereditament and as such is within the statute of frauds and requires a writing for its creation.[10]
The predominant feature in the instant case is the taking, with neither consent nor compensation, by the appellant from the appellees, of a property right  the right to pursue the game on their land. It is our view that the Commission is empowered to regulate the taking of game and to acquire property, by purchase and gift, for its use but that under the authority delineated in the Constitution, it is not, under the guise of regulation or otherwise, empowered to take private property for public purpose without just compensation. There is no Florida precedent for a contary view and such federal precedent as there may be is less than persuasive. We are not yet ready in this State to embrace the "managed economy" theory of government.
If it be urged that any doubt touching the validity of the order involved should be resolved in its favor we suggest that, conversely, all doubt should be resolved in favor of the Constitutional interdiction *794 against the taking of private property without compensation. Recognizing the laudable purpose of the Game Commission and its regulatory powers in an increasingly complex society we must conclude that the adjective advantage of game preservation cannot overshadow the mischief to be achieved by the circumvention of the Bill of Rights.
It should be noted that the authority of the Commission to establish refuges is defined by Article IV, Section 30 (1), Florida Constitution,[11] which prescribes that such refuges may be established on property "now or hereafter owned or used for such purposes by the State of Florida." Paragraph (4) of the same section authorizes the Commission to acquire property by purchase or gift but not otherwise.[12] The amendment, the source of the Commission's power, does not authorize the Commission, without consent to the owner, to establish refuges on private property, either by virtue of police power or the exercise of eminent domain.[13]
The Commission has full power to establish "open and closed seasons" within the purview of Art. IV, Sec. 30, of the Florida Constitution. The implementing statute, 372.001, F.S.A., defines "open season" and "closed season" as "that portion of the year" wherein game may or may not be taken. Neither the constitutional amendment, supra, nor the implementing statute, authorizes, by the closed season method, the prohibition of hunting on a given parcel of privately owned land over a period of years.
We find: (1) That the appellees were the owners of a property right, an incorporeal hereditament which runs with the fee, to take the game on their lands under valid regulation, (2) That the appellant took the private property of the appellees without just compensation, (3) That such taking cannot be justified under any theory, inherent power, damnum absque injuria or otherwise and (4) That appellant has no constitutional authority, express or otherwise, to exercise the police power to classify private property as a refuge without compensation to the owner.
It is not compatible with sound jurisprudence that the Commission be permitted to invade the owners' right and to cloud the title of his land by the imposition of the *795 order in controversy. If, as is claimed, the chief value of the land of the appellees is the right of the owners to pursue the game thereon then, obviously, when they are deprived of that right they are deprived of property and about all that is left to them is the privilege of paying taxes thereon. The State, by pre-empting the instant incorporeal hereditament appertaining to the appellees' isolated parcel of land and forbidding, without compensation, the enjoyment thereof, violates fundamental law. The salutary purpose of the Commission will not be well served by the exercise of authority achieved by this Court's strained construction of the Constitution.
Affirmed.
ROBERTS, C.J., and THOMAS and THORNAL, JJ., concur.
DREW, J., dissents with opinion.
TERRELL and O'CONNELL, JJ., dissent and agree with DREW, J.
DREW, Justice (dissenting).
This appeal presents for review a decree of the Circuit Court for Leon County granting injunctive relief and limiting the power of the Florida Game Commission to designate privately owned lands as a game refuge within which hunting and trapping is prohibited altogether.
Appellees own in the aggregate approximately 700 acres of a 10,000-acre refuge established near the center of the Gulf Hammock Wildlife Management Area, comprised of other privately owned lands which are leased by the Commission to permit game management by its agents and public hunting upon special license. The only difference in the requirement for hunting in the controlled area and outside it is a special permit. Outside the controlled area game may be taken by anyone possessing a regular hunting license. It is, therefore, quite clear that the fact that the subject lands are surrounded by a larger area under controlled hunting is not determinative of the real inquiry, viz. the power of the Commission to establish game refuges or areas closed to hunting on private land. The action of the Commission in arranging by leases or otherwise, with the owners of large tracts of land for its use by the public for hunting (a use which could be  and usually is  prohibited by the owners) seems to have confused the issues. Such facts affect the power of the Commission under the Constitution to establish refuges or closed areas only insofar as they may indicate compliance with the basic requirement that a refuge shall benefit the public rather than private interests.
The court below, in the course of its comprehensive decree in this cause, noted the express authority of the Commission under Art. IV, Sec. 30(4),[1] Fla. Const., to "fix * * * closed seasons * * * on a * * * local basis," and recognized the "sound propogation, management, and conservation technique" evident in the order creating this refuge by maintaining closure in the subject area. It concluded, however, that the acknowledged public purpose and *796 benefit did not warrant extinguishing appellees' hunting rights on their lands, and that such action constituted a taking of private property without compensation, a deprivation of property without due process, and denial of equal protection of the laws, contrary to Sec. 29, Art. XVI, and Sec. 1, 4 and 12, Decl.Rights, Fla. Const. and Amend. XIV, U.S.Const.
Considerable reliance, in support of this conclusion, is placed upon the statement in Hamilton v. Williams, 145 Fla. 697, 200 So. 80, 81:
"The owner of the soil, however, has a special and qualified interest in the wild game while it is thereon. Such special and qualified interest is a property right incident to his ownership of the soil. That property right is the right to exclusively hunt such wild game upon the soil, subject to any lawful regulation by the State. L. Realty Co. v. Johnson, 92 Minn. 363, 100 N.W. 94, 66 L.R.A. 439, 104 Am.St.Rep. 677; State v. Mallory, 73 Ark. 236, 83 S.W. 955, 67 L.R.A. 773, 3 Ann.Cas. 852; Schulte v. Warren, 218 Ill. 108, 75 N.E. 783, 13 L.R.A.,N.S., 745; Lamprey v. Danz, 86 Minn. 317, 90 N.W. 578."
The decision in that case was simply that the purchase of a hunting license does not authorize entry upon private lands to take game, such rights being exclusively in the owner. The purpose of the adjudication was, therefore, to determine the limited rights vested by a hunting license, rather than to define the nature of an owner's interest in wild game on his land except as a right to have exclusive access and to prevent access of others by trespass.[2] Neither this nor later cases can be regarded as authority for the existence of individual property interests of any description in game while it is still in the wild state, or for the limitation imposed below upon the well established[3] sovereign trust title and right of control over the taking of wild game upon private lands in this State.
The contention is that decisions elsewhere sustaining sovereign authority in these circumstances are distinguishable because of the unique character of the area involved and its particular relationship to the conservation program.[4] I believe, however, that such factors go only to the issue of the necessity for the regulation or its reasonable relationship to the preservation of public interests, and that so long as the designation of the area in question is in fact necessary to accomplish the Commission's lawful objectives, it may be sustained whether or not another area would serve as well. Inherent in any exercise of the power to establish closed seasons on a local basis, Art. IV, Sec. 30, supra, is a difference or "inequality" of law, but this is an inequality between hunters as opposed to owners in one area and those in another. I conclude that the right regulated is one which, except for the law of trespass, may in any given locality be exercised in the same manner by all individuals, or which may in any given area be denied to all, including owners, so long as the prohibition is shown to be genuinely in the public interest.
In the instant case, the choice of appellees' property as a part of the refuge is not shown to have been made on any improper basis, and I think the record evidence is conclusive that the action of the Commission was within its constitutional *797 powers. The appellees, by inclusion of their lands within the refuge, have not suffered the loss or invasion of private property rights cognizable at law, nor have they demonstrated on any objective standard that the regulation deprives them of the only use to which their lands are reasonably susceptible. They benefit, potentially at least, equally with members of the public at large in improved hunting conditions in the surrounding areas covered by the lease agreements above described.
The independent provisions in our laws[5] for the acquisition by the Commission of title to lands for conservation purposes do not in my opinion foreclose the creation of a refuge area by maintaining hunting prohibitions within a specified locality in those instances when the public interests require only the regulation or prohibition of the taking of game therein without the exercise of proprietary control by the Commission.
The omission of the power of eminent domain from the Commission's enumerated powers supports rather than negates its authority in the situation at bar. That omission can most logically be explained on the ground that the preservation of game in the wild state should normally be accomplished by regulation or prohibition of hunting rather than by acquisition of the land itself. I find no contrary indications in the constitutional language or in any comment contemporaneous with the enactment of Sec. 30, Art. IV, supra. Entry upon or possession of private lands might, of course, be desirable or convenient in the establishment of refuges in certain circumstances, involving for instance provision of special facilities or care for game. Land acquisition for such purposes is, under the constitutional enabling clause, limited to voluntary sale and purchase, the power of condemnation being deemed unnecessary. To couple this omission, however, with the highly restrictive construction placed by the court below upon the Commission's regulatory power results in limiting the use of an important conservation technique, the designation of refuge areas, entirely to the situation where landowners may choose to accede to the public interest in overall game preservation. The conclusion, in other words, is not simply that an owner must be compensated for his relinquishment, when necessary in the public interest, of hunting rights on his land. Instead, under current provisions, there would exist no certain means for securing such cooperation, with or without compensation, no matter how imperative may be the necessity for some refuge area in the interest of a sound conservation program in a particular locality. This result, in my opinion, is not dictated by the specific constitutional language, by collateral constitutional guaranties, or by any necessary inference from the statutory definition, F.S. Sec. 372.001(10), F.S.A., of a closed season as a "portion of the year."
With profound respect for the views of my colleagues, I must say that in my humble judgment the majority opinion emasculates the Commission in one of its most significant functions, the effective preservation of a vital but ever diminishing part of the public domain  its wildlife.
I would accordingly reverse the decision of the chancellor and remand the cause for the entry of a decree denying injunctive relief.
TERRELL and O'CONNELL, JJ., concur.
NOTES
[1] Fla. Const., Art. IV, § 30:

"Game and fresh water fish commission; powers, duties, etc.
"(1) From and after January 1, 1943, the management, restoration, conservation, and regulation, of the birds, game, fur-bearing animals, and fresh-water fish, of the State of Florida, and the acquisition, establishment, control, and management, of hatcheries, sanctuaries, refuges, reservations, and all other property now or hereafter owned or used for such purposes by the State of Florida, shall be vested in a Commission to be known as the Game and Fresh Water Fish Commission. * * * (2) & (3) * * *.
"(4) Among the powers granted by the Commission by this section shall be the power to fix bag limits and to fix open and closed seasons, on a statewide, regional or local basis, as it may find to be appropriate, and to regulate the manner and method of taking, transporting, storing and using birds, game, fur-bearing animals, fresh-water fish, reptiles, and amphibians. The Commission shall also have the power to acquire by purchase, gift, all property necessary, useful, or convenient, for the use of the Commission in the exercise of its powers hereunder. (5)-(7) * * *"
[2] 24 Am.Jur., Game & Game Laws, 377 (1939).
[3] Blades v. Hicks, 11 H.L.Cas. 621, 630 (1865).
[4] 2 Blackstone, Commentaries [*]415.
[5] State v. Mallory, 73 Ark. 236, 246, 83 S.W. 955, 957, 67 L.R.A. 773 (1904); See 49 A.L.R.2d 1379 (1956).
[6] 242 Minn. 498, 507, 65 N.W.2d 857, 863, 49 A.L.R.2d 1379 (1954).
[7] 145 Fla. 697, 700, 200 So. 80, 81 (1941).
[8] Sylvester v. Tindall, 154 Fla. 663, 675, 18 So.2d 892, 898 (1944).
[9] 2 Tiffany, Real Property 731 (3 ed. 1939).
[10] 24 Am.Jur., Game and Game Laws, 397 (1939); St. Helen Shooting Club v. Mogle, 234 Mich. 60, 65, 207 N.W. 915, 917 (1926).
[11] Footnote 1, supra.
[12] Ibid.
[13] The amendment, originally SJR 28, 1941, Senate Journal, page 25, authorized the acquisition of land:

"The Commission shall have the power to acquire by purchase, gift, eminent domain, or otherwise, all property necessary, useful or convenient for the use of the Commission, or for the exercise of any of its powers hereunder, and in the event the right of eminent domain is exercised, it shall be exercised in the same manner as now or hereafter may be provided for the exercise of eminent domain by the State Road Department."
The Committee struck the language relating to eminent domain and reported the Bill in the form of committee substitute. As so reported, page 129, the power to acquire property read as follows:
"The Commission shall also have the power to acquire by purchase, gift, or otherwise, all property necessary, useful, or convenient, for the use of the Commission in the exercise of its powers hereunder."
The same page of the Journal shows the paragraph is further amended by the elimination of the word "otherwise." The Legislative history demonstrates a clear legislative intent to deny the Commission power to acquire property except by purchase or by gift. See Revels v. De Goyler, 159 Fla. 898, 33 So.2d 719 (1948). 372.001, F.S.A. provides for the acquisition by the Commission of lands by "purchase, gift or otherwise", the title of such lands to be approved by the Attorney General and the deed deposited as are deeds to other State lands. It seems clear that neither the Constitution nor the implementing statutes contemplate acquistion by the Commission of land or an interest in land, such as the right herein involved, by the method followed by the appellants in this cause.
[1] Among the powers granted to the Commission by this section shall be the power to fix bag limits and to fix open and closed seasons, on a statewide, regional or local basis, as it may find to be appropriate, and to regulate the manner and method of taking, transporting, storing and using birds, game, fur-bearing animals, fresh-water fish, reptiles, and amphibians. The Commission shall also have the power to acquire by purchase, gift, all property necessary, useful, or convenient, for the use of the Commission in the exercise of its powers hereunder."
General authority of this body vested by Sec. 30 includes:
"* * * the management, restoration, conservation, and regulation, of the birds, game, fur-bearing animals, and fresh-water fish of the State of Florida, and the acquisition, establishment, control, and management, of hatcheries, sanctuaries, refuges, reservations * * *."
[2] The cases cited relate in the main to determination of rights between owners and third party individuals and not to state control of an owner's alleged rights in game.
[3] Harper v. Galloway, 58 Fla. 255, 51 So. 226, 26 L.R.A.,N.S., 794; State ex rel. Spencer v. Bryan, 87 Fla. 56, 99 So. 327; State v. Lee, Fla. 1949, 41 So.2d 662.
[4] Lansden v. Hart, U.S.C.A. 1950, 7 Cir., 180 F.2d 679. See also Platt v. Philbrick, 8 Cal. App.2d 27, 47 P.2d 302; State v. McKinnon, 153 Me. 15, 133 A.2d 885; Bauer v. State Game Comm., 138 Neb. 436, 293 N.W. 282; Maitland v. People, 93 Colo. 59, 23 P.2d 116; Cook v. State, 192 Wash. 602, 74 P.2d 199.
[5] Sec. 30, Art. IV, note 1 supra, and F.S. Sec. 372.12, F.S.A.