**In re PSYCHOTHERAPY AND
COUNSELING CENTER,
INC., Debtor.**

**Bankruptcy No. 94–0005.**

United States Bankruptcy Court,
District of Columbia.

May 15, 1996.

William Douglas White, Filippo Zucchi, Lepon, McCarthy, White & Holzworth, Washington, DC, for Debtor.

Stacey M. Ludwig, Asst. U.S. Atty., Washington, DC, for movant.

*DECISION ON MOTION FOR DECLARATION THAT PROPOSED EXCLUSION IS EXCEPTED FROM AUTOMATIC STAY OR, ALTERNATIVELY, FOR RELIEF FROM STAY*

S. MARTIN TEEL, Jr., Bankruptcy Judge.

Under the court's consideration is a motion in the alternative filed by the United States Department of Health and Human Services ("HHS") seeking a declaration that the automatic stay does not bar it from excluding the debtor, Psychotherapy and Counseling Center, Inc., from participating in Medicare and the state health care programs based on the debtor's default under a settlement agreement with HHS. Alternatively, HHS requests relief from the automatic stay so it can proceed to exclude the debtor from participation in the programs.

This case arises out of HHS's investigation of the debtor for alleged violations of the False Claims Act in connection with the Medicare and Medicaid provider reimbursement program. HHS and the debtor agreed to settle the matter before trial pursuant to a settlement agreement whereby HHS agreed to drop all claims against the debtor in return for the debtor's agreement, without admitting any fault, to pay HHS $145,000 over three years. The debtor defaulted on the agreement after the first year and filed for bankruptcy. HHS now seeks to exclude the debtor from the program, which is the sole remedy provided in the default provision of the agreement. HHS argues that if it is unable to enforce the exclusion remedy, HHS's ability to settle cases will be undermined because violators can simply escape the responsibility under the settlement by filing bankruptcy after settling the claims. For reasons explained below, HHS's motions will be denied.

*BACKGROUND FACTS*

The debtor is a mental health center that participates in the Medicare and Medicaid provider reimbursement program pursuant to Medicare and Medicaid Provider Agreements with HHS. On January 16, 1992, HHS and the debtor [1] entered into a settlement agreement to resolve the debtor's potential liability for the alleged submission of false claims to the Medicare and Medicaid programs from January 1988 to January 1992 in violation of the civil False Claims Act [2] and certain other civil common laws.

---

**1.** The other potential defendants participating in this settlement were the debtor's past and present employees, including the debtor's president and executive director, Edwina C. Morrison.

**2.** 31 U.S.C. §§ 3729–3733.

Under the terms of the settlement HHS gave up its right to pursue the debtor for any cause of action arising from the alleged false claims. In return, without admitting any fault or wrong-doing, the debtor agreed to pay HHS a total of $145,000, together with 6.5% annual interest. The debtor's payment was to be made pursuant to a promissory note incorporated into the agreement, which provided for an initial up-front payment of $20,000 to HHS to be followed by four yearly installments of $36,250, beginning on December 1, 1992.[3]

In the event of default, Article VI of the agreement provided that:

the United States of America through the Department of Health and Human Services may at any time and at its option exclude the ... Parties from participation in the Title XVIII (Medicare) program and applicable State health care programs pursuant to 42 U.S.C. 1320a–7a(a) and 42 U.S.C. § 1320a–7(h) until such time as the ... Parties have fully cured the default. The ... Parties agree not to contest such exclusion either administratively or in any State or Federal court.

The debtor complied with the initial $20,000 payment immediately due under the note but was late on the first $36,250 payment due on December 1, 1992, making this payment in two installments on January 21 and February 19, 1993. Thereafter, the debtor made no further payments and filed for bankruptcy under chapter 11 on January 5, 1994, shortly after the second annual payment was due. Following the debtor's petition, HHS sent two letters notifying the debtor of its default under the agreement and indicating an intent to enforce the exclusion remedy provided in the agreement. Specifically, on February 16, 1994, the United States Department of Justice ("DOJ") as counsel for HHS sent a letter to the debtor which read, in relevant part:

We have not received the above payment. If we do not receive full payment on or before March 16, 1994, thirty days from today's date, we will be forced to proceed with the legal remedies provided

in the Agreement for the collection of this debt.

*See* Debtor's Supp.Mem. in Opp. at Attach. 1.

Similarly, on August 12, 1994, HHS sent a letter to the debtor providing:

In accordance with Article VI of the Agreement, we now intend to exclude you from participation in the Medicare and all State health care programs because of your default. . . .

Unless you repay all amounts now due within 30 days of your receipt of this letter, we will take the exclusion action and notify the public as well as all other appropriate parties.

*See id.* at Attach. 2.

On April 24, 1995, the debtor filed its Amended Plan of Reorganization which provided under Article V that the Medicare and Medicaid Provider Agreements with HHS would be assumed as part of the plan. Additionally, under Article III of the plan HHS's claim for amounts due under the settlement agreement was classified as a general unsecured claim designated to receive a pro rata distribution of assets valued at approximately $30,000 to $40,000.

On May 18, 1995, HHS filed this motion seeking permission to exclude the debtor from the health care program. Specifically, HHS seeks a declaration that its proposed exclusion of the debtor is excepted from the automatic stay under 11 U.S.C. § 362(b)(4) as an enforcement of regulatory power. HHS insists that this exercise of regulatory authority is not motivated by the desire to collect the debt owed under the agreement, conceding that a desire to protect its pecuniary advantage would be an improper motivation, citing *United States ex rel. Marcus v. NBI, Inc.,* 142 B.R. 1, 3 (D.D.C.1992). Rather, HHS contends that it is seeking to exclude the debtor because the debtor is untrustworthy as demonstrated by its default under the settlement agreement. HHS supports this conclusion with the affidavit of William M. Libercci, the HHS Director of

3. The parties dispute whether this note was secured by a deed of trust on real property located in the District of Columbia.

Health Care Administrative Sanctions, in which he states that:

> An exclusion from participation in the Medicare and State health care programs is not an action to collect a debt. Rather, it is a determination that a particular individual or entity is no longer eligible to participate in the Medicare and State health care programs because that individual or entity has demonstrated by past conduct they are untrustworthy.

*See* HHS Mot. at Ex 2.

HHS further argues that its proposed exclusion action is non-pecuniary because it arises out of and is the natural continuation of an investigation of the debtor for submission of false claims. HHS has provided an affidavit by Glenn Ferry, a special agent of HHS who investigated the allegations of false claims against the debtor, in which he asserts that he found evidence that the debtor "had submitted in excess of 1,000 claims to Medicare and Medicaid that were arguably false," which totaled approximately $122,000. Other support HHS provides for its contention that its proposed action is non-pecuniary is that it will not affect property of the estate or other creditors because the debtor has no entitlement to participate in the program. HHS argues it is simply seeking to exercise its discretionary right to determine what entities will participate in the program. HHS argues this will not deprive other creditors of their share of the estate's available funds because exclusion of the debtor from the program does not deplete the estate of any funds. HHS argues it should not be forced to fund the debtor's reorganization if it has determined that the debtor is not a proper participant in the program.

The debtor argues that HHS's proposed exclusion does not fall within the narrow exception to the stay created by 11 U.S.C. § 362(b)(4). The debtor contends that HHS is not seeking to enforce its regulatory power but rather is seeking to exclude the debtor merely because it failed to pay a debt owed on the promissory note created pursuant to the settlement agreement. The debtor contends that, beyond its inability to pay the amounts due under the promissory note, its current conduct does not warrant exclusion from the program. Moreover, the debtor contends that HHS's action to exclude it from the program is also prohibited by the anti-discrimination provisions of 11 U.S.C. § 525(a), which provides in relevant part:

> ... a governmental unit may not deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to, [or] condition such a grant to ... a person that is or has been a debtor under this title ... solely because such bankrupt or debtor is or has been a debtor under this title ..., has been insolvent before the commencement of the case under this title, or during the case but before the debtor is granted or denied a discharge, or has not paid a debt that is dischargeable in the case under this title. ...

The debtor asserts that HHS's proposed exclusion would violate § 525(a) because HHS is seeking to revoke the debtor's Medicare and Medicaid provider agreements solely because the debtor has not paid a debt that is dischargeable under this title.

Finally, the debtor argues that even if HHS's effort to exclude the debtor is covered by the exception to the automatic stay under 11 U.S.C. § 362(b)(4), the court should exercise it general equitable power under 11 U.S.C. § 105 to enjoin HHS's action because without the income from the program, the debtor contends it cannot reorganize.

Alternatively, if the court determines that HHS is not entitled to exception from the automatic stay under 11 U.S.C. § 362(b)(4), HHS moves for relief from the stay to exclude the debtor under 11 U.S.C. § 362(d)(1) for "cause." HHS argues "cause" exists in the present case by reason of the debtor's apparent waiver in Article VI of the settlement agreement, wherein the debtor agreed in the event of default "not to contest such exclusion either administratively or in any State or Federal court." HHS argues the waiver should be enforceable against the debtor in this case and estop it from contesting HHS's lift stay motion.

The debtor disputes HHS's contention concerning the scope and intent of the waiver in Article VI of the agreement. Raymond Cot-

ton, debtor's counsel during the settlement with HHS, states in his unrebutted affidavit that:

> The debtor specifically did not intend to waive its right to file bankruptcy and have the protection of the automatic stay. In fact, the original draft of the agreement submitted to me by HHS included language which attempted to limit the Debtor's rights vis a vis HHS in the event that the Debtor did file bankruptcy. I insisted during my discussions with HHS that such language be removed from the agreement because the Debtor did not want to execute a document which might limit its rights in the event that it found it necessary in the future to seek bankruptcy protection. The limiting language was removed from the agreement.

*See* Debtor's Supp.Mem. in Opp. at Attach. 3.

## DISCUSSION

When a debtor validly files for federal bankruptcy protection, under § 362(a) of the Bankruptcy Code an automatic stay freezes almost all actions against the debtor. The protection afforded by the stay is intended to be quite broad, stopping virtually all collection efforts by the debtor's creditors, including actions by governmental units.[4] The Code's legislative history states:

> The automatic stay is one of the fundamental debtor protections provided by the bankruptcy laws. It gives the debtor a breathing spell from his creditors. It stops all collections efforts, all harassment, and all foreclosure actions. It permits the debtor to attempt a repayment or reorganization, or simply to be relieved of the

financial pressures that drove him into bankruptcy.[5]

The stay is not meant, however, to be an absolute refuge for the debtor. Section 362(a) is subject to a series of exceptions set forth in § 362(b).

### A. Exception to the Automatic Stay under 11 U.S.C. § 362(b)(4).

■ The exception to the automatic stay under 11 U.S.C. § 362(b)(4), often called the civil police power exception, provides that the filing of a bankruptcy petition "does not operate as a stay ... under (a)(1) of this section,[6] of the commencement or continuation of an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power.∴.." Relying on the legislative history of this section,[7] courts interpret "§ 362(b)(4) to allow an action to proceed where a 'governmental unit is suing a debtor to prevent or stop violation of fraud ... laws or attempting to fix damages for violation of such a law.' *In re Commonwealth Companies, Inc.*, 913 F.2d 518, 522 ([8th Cir.] 1990)." *United States ex rel. Marcus v. NBI, Inc.*, 142 B.R. 1, 3 (D.D.C. 1992). In determining whether § 362(b)(4) applies to a certain governmental proceeding, the United States District Court for the District of Columbia in *NBI*, to which any appeal from this court would be taken, applied what could be called the "pecuniary advantage" test. *Id.* As stated by the court in *NBI*, the relevant inquiry under this test is as follows:

> when a governmental proceeding will not conflict with the bankruptcy court's control

---

**4.** Section 362(a) applies to "all entities," which is defined under § 101(15) to include governmental units.

**5.** H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 340–44 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6296–97.

**6.** 11 U.S.C. § 362(a)(1) provides for a stay at petition of "the commencement or continuation ... of a judicial, administrative ... proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title ..."

**7.** Paragraph [§ 362(b) ](4) excepts commencement or continuation or actions and proceedings by governmental units to enforce police or regulatory powers. Thus, where a governmental unit is suing a debtor to prevent or stop violation of fraud, environmental protection, consumer protection, safety, or similar police or regulatory laws, or attempting to fix damages for violation of such a law, the action or proceeding is not stayed under the automatic stay.
S.Rep. No. 989, 95th Cong., 2d Sess. 52, *reprinted in* 1978 U.S.C.C.A.N. 5787, 5838; H.R.Rep. No. 595, 95th Cong., 2d Sess. 343 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6299.

of the property of the debtor and will not otherwise create a pecuniary advantage for the government, the proceeding will be excepted from the automatic stay provision of the Bankruptcy Code, 11 U.S.C. § 362(a), by means of § 362(b)(4) of the Code, provided the proceeding is pursuant to the police or regulatory powers of that governmental unit.

*Id.*

■ The approach used by the *NBI* court relies on a decision by the United States Court of Appeals for the Eighth Circuit in *In re Commonwealth Companies, Inc.,* 913 F.2d 518, 524 (8th Cir.1990), in which the court of appeals rejected a more narrow analysis of the scope of the § 362(b)(4) exception used by some courts.· *See, e.g., In re Commerce Oil Co.,* 847 F.2d 291, 295–96 (6th Cir.1988). The more narrow approach, which based on comments during the floor debates recorded in the legislative history is referred to as the "pecuniary interest" test,[8] as opposed to the pecuniary *advantage* test, holds that actions by a governmental unit will *only* be excepted from the automatic stay if the government is seeking through its action to protect public health, safety, and welfare and not seeking to protect a pecuniary interest. *See id.; In re Corporacion de Servicios Medicos Hosp.,* 805 F.2d 440, 445 n. 4 (1st Cir.1986). The Eighth Circuit rejected this narrower interpretation, instead following reasoning from *CPI Crude, Inc. v. United States Dept. of Energy,* 77 B.R. 320, 323 (D.D.C.1987), another District of Columbia District Court decision on the issue, stating that

"such a reading of section § 362(b)(4) and of that provision's legislative history would render the exception unworkable. It is generally the case that the government regulates private conduct by establishing penalties for certain violations of rules it prescribes. This does not mean that when it seeks to enforce the regulatory scheme in question, it is merely seeking to protect

some. 'pecuniary interest' in the monies represented by the penalties or damages levied.... Under the 'pecuniary interest' test as it seems to be applied, a money judgment could *never* be entered against a debtor, for it would necessarily represent only a 'pecuniary interest' in the property of the debtor thus triggering the automatic stay." (emphasis in original).

*In re Commonwealth Companies,* 913 F.2d at 524–25.

Based on the broader "pecuniary advantage" interpretation of the exception under § 362(b)(4), the courts in *NBI* and *Commonwealth Companies* concluded that attempts by a governmental unit to pursue litigation against the debtor in order to fix damages, whether monetary or not, would fall within the § 362(b)(4) governmental exception to the stay. *See NBI,* 142 B.R. at 3 (proposed action by plaintiff to have district court enter judgment fixing the amount of damages owed by debtor pursuant to False Claims Act was excepted from stay); *In re Commonwealth Companies,* 913 F.2d at 524 (government's attempt to obtain entry of judgment against debtors for debtors' alleged violations of False Claims Act excepted from stay). The courts reasoned that fixing the government's damage award provided no pecuniary advantage to the government because the government sought only the *entry* of a judgment and not any sort of *enforcement* of that judgment against the debtor. *See NBI,* 142 B.R. at 3–4; *In re Commonwealth Companies,* 913 F.2d at 524. With the circumstances of these cases in mind, the court now turns to review the facts of this case.

In this case the action sought by HHS is to exclude the debtor from the provider payment program. There are two possible avenues that HHS may pursue to accomplish this exclusion. HHS may either seek to enforce the exclusion remedy provided in the terms of the settlement agreement based on the debtor's breach of that agreement. Or

---

**8.** [Section 362(b)(4)] is intended to be given a narrow construction in order to permit governmental units to pursue actions to protect the public health and safety and not to apply to actions by a governmental unit to protect a pecuniary interest in property of the debtor or property of the estate.

124 Cong.Rec. H11092 (daily ed. Sept. 28, 1978); S17409 (daily ed. Oct. 6, 1978) (remarks of Rep. Edwards and Sen. DeConcini). The floor comments are considered "persuasive evidence of congressional intent." *Begier v. Internal Revenue Service,* 496 U.S. 53, 64 n. 5, 110 S.Ct. 2258, 2266 n. 5, 110 L.Ed.2d 46 (1990).

HHS may seek to exclude the debtor from the program pursuant to its statutory authority provided in 42 U.S.C. §§ 1320a–7 and 1320a–7a, the standards for which are discussed below. In either case, whether the proposed action is excepted from the stay under 11 U.S.C. § 362(b)(4) turns on the pecuniary advantage test. The court will address each of the possible avenues separately.

### 1. The Settlement Agreement.

■ The court concludes that any attempt by HHS to enforce the settlement agreement in order to exclude the debtor would not be excepted from the automatic stay under 11 U.S.C. § 362(b)(4). Clearly, by its own terms the settlement agreement provides that excluding the debtor would be based only on the debtor defaulting on a debt owed to HHS. In the agreement, HHS agreed to one remedy in the event of default—exclusion of the debtor until the debtor cured the default. Thus, the court can only conclude that such an action would be an effort by HHS to gain a pecuniary advantage in the bankruptcy by enforcing the debt under the settlement agreement. Further evidence of the pecuniary nature of HHS's action under the settlement agreement are the letters HHS sent to the debtor postpetition seeking payment of the debt and threatening exclusion.

"Nowhere is it mentioned that section 362(b)(4) permits government agencies to enforce *contractual* rights against debtors without first seeking relief from the automatic stay." *In re Corporacion de Servicios Medicos Hosp.,* 805 F.2d at 445–47 (emphasis in original, footnote omitted) (court stayed department of health's revocation of debtor's license to operate hospital based on debtor's breach of contract); *see United States v. Nicolet, Inc.,* 857 F.2d 202, 209 (3rd Cir.1988) (dicta). In order to recover for the debtor's breach of the settlement agreement, HHS is entitled to the same treatment as all the debtor's other creditors whose contracts the debtor breached. *See In re Corporacion de Servicios Medicos Hosp.,* 805 F.2d at 446. HHS took the risk of settling its claims against the debtor for monetary payment without instituting an action to exclude the debtor from the program and should not now be permitted to avoid the consequences of that decision by falling back on its governmental status without first invoking legitimate regulatory powers. *Id.* Accordingly, any attempt by HHS to enforce the settlement agreement would not be covered by the 11 U.S.C. § 362(b)(4) exception.

### 2. Administrative Action.

■ The other possible avenue for HHS to pursue in order to exclude the debtor would be pursuant to an administrative action *independent of the settlement agreement.* HHS argues that its proposed exclusion should be excepted because it is not an attempt to gain a pecuniary advantage or exercise control over property of the estate. HHS argues that it is not seeking repayment; rather, based on its determination that the debtor is untrustworthy, HHS has concluded that the debtor is not the type of provider it wants in the program and seeks to exclude it on that basis. HHS argues that excluding the debtor will not affect property of the estate because the debtor has no property interest in the provider agreement. Further, HHS contends that this exclusion is the direct result and natural continuation of its investigation of False Claims Act violations by the debtor and thus falls within the reasoning of *NBI* and *Commonwealth Companies.*

■ At the outset the court finds it important to point out how this case is distinguishable from *NBI, Commonwealth Companies* and similar cases discussed above. Unlike those cases where the governmental unit was seeking permission to initiate or continue proceedings in order to *enter* judgment against the debtor, in this case HHS is seeking to *enforce* against the debtor an alleged determination that the debtor should be excluded from the provider program. Based on *NBI* and *Commonwealth Companies,* the Secretary of HHS would be free under 11 U.S.C. § 362(b)(4) to *proceed to make a determination* that the debtor should be excluded from the program under the Social

Security statute.[9] This would clearly represent an exercise of police or regulatory power. *See In re Commonwealth Companies, Inc.*, 913 F.2d at 525. The *enforcement* against the debtor of such a determination, however, would still require review by the court to ensure the exclusion did not violate the pecuniary advantage test or 11 U.S.C. § 525(a)'s anti-discrimination restriction.[10] Unlike the above cases, the *enforcement* of this determination in the form of an exclusion is much more likely to conflict with the bankruptcy court's control over property of the estate and to provide HHS with pecuniary advantage, depending on its basis.[11] *See In re Gull Air, Inc.*, 890 F.2d 1255, 1262–63 (1st Cir.1989) (noting significance of enforcement). Furthermore, under 11 U.S.C. § 525(a) HHS may not seek to revoke the debtor's Medicare and Medicaid provider agreements solely because the debtor has not paid a debt that is dischargeable in bankruptcy.[12] Accordingly, the court must review the basis for the HHS decision to exclude the debtor in order to determine whether the enforcement of the determination falls within the § 362(b)(4) exception.

Although HHS alleges having made a determination concerning the debtor's exclusion, HHS has cited no independent statutory authority for excluding the debtor from the program. The court's review of the Social Security Act, the relevant statutory authority, reveals the following. Under 42 U.S.C. § 1320a–7, the Secretary of HHS has mandatory and permissive exclusion authority, the grounds for which are specifically spelled out by the statute. The grounds for mandatory exclusion under 42 U.S.C. § 1320a–7(a) are conviction for program related crimes or patient abuse. The grounds for permissive exclusion under 42 U.S.C. § 1320a–7(b) are numerous, including conviction for certain improper acts related to things such as fraud and findings by the Secretary that the provider has committed certain improper acts such as submitted claims for unnecessary services, failed to disclose required information, or failed to take corrective action. Under 42 U.S.C. § 1320a–7(c), the provider is entitled to reasonable notice of the exclusion, which takes effect within 30 days of reasonable notice. If dissatisfied with the exclusion, the provider is entitled to a hearing and judicial review of the Secretary's final decision. *See* 42 U.S.C. § 1320a–7(f).

Similarly, under 42 U.S.C. § 1320a–7a(a) the Secretary may exclude the provider from the program if the provider is found to have improperly filed claims. However, under 42 U.S.C. § 1320a–7a(c), the Secretary of HHS may only exclude a provider for improperly filed claims after notice and an evidentiary hearing authorized by the Attorney General. Unless there is a health and safety concern, the Secretary's determination that exclusion is appropriate for improperly filed claims under 42 U.S.C. § 1320a–7a takes effect only after the hearing. *See* 42 U.S.C. § 1320a–7(f).

Based the court's review, it appears that HHS clearly has the statutory authority to

9. As it is not properly before the court at this time, the court declines to determine whether in the event of default the terms of the settlement are effective to bar HHS from pursuing the False Claims Act claims against the debtor. The debtor argues that any attempt by HHS to pursue these allegations of false claims would be barred by the settlement agreement. HHS disputes the debtor's contention by reason of Article IV of the agreement which HHS contends specifically permits it to pursue claims under the settlement agreement in the event of default.

10. Although governmental enforcement of a judgment is addressed under 11 U.S.C. § 362(b)(5), that exception to the stay applies only to *prepetition* judgments. HHS has obtained no prepetition judgment against the debtor in this case. Indeed there is no evidence that

HHS has obtained *any* judgment in this case. Accordingly, HHS has not argued that § 362(b)(5) applies to this matter and the court sees no relevance of the provision in this decision.

11. The only proven basis for exclusion at this juncture is the failure to make payments as provided by the settlement agreement. If that is the sole basis upon which any determination to exclude is made, the enforcement of that determination would run afoul of the pecuniary advantage test. As to other bases for exclusion, the settlement agreement may or may not bar such bases from being invoked. *See* n. 10.

12. All of a corporation's debts are dischargeable under a non-liquidating chapter 11 plan. 11 U.S.C. § 1141(d).

exclude the debtor from the program and the debtor has not disputed this. However, in order for the court to determine whether HHS's proposed action is excepted from the automatic stay under § 362(b)(4), the court still must review the basis for the proposed action under the pecuniary advantage test. Furthermore, as the debtor suggests, were HHS's exclusion based solely on the debtor's nonpayment of debt, it might run afoul of the Code's anti-discrimination provision under 11 U.S.C. § 525(a).

As discussed above, the relevant inquiry is whether HHS's proposed action conflicts with the court's control of property of the estate or otherwise creates a pecuniary advantage. *See NBI*, 142 B.R. at 3. Unfortunately, HHS has provided the court with no record or affidavit evidencing the basis for its alleged determination that the debtor should be excluded. In its papers, HHS contends that it is seeking to exclude the debtor based on its determination, in connection with its false claims investigation of the debtor, that the debtor is untrustworthy. However, although Libercci's affidavit states that exclusion of an entity *may* stem from a determination that the entity is untrustworthy, he makes no comment stating specifically that HHS's basis for excluding the debtor *did* stem from such a determination. Similarly, Ferry's affidavit alleges evidence of the debtor's submission of false claims but these are only allegations and not presented as a basis for the proposed exclusion.

Several things are unclear on this record. First, did HHS make any official determination concerning the debtor? This is vital because without such a determination, it is not clear that HHS has any independent statutory authority, apart from the settlement agreement, to exclude the debtor from the program. Although Ferry alleges wrongdoing on the part of the debtor, no official findings of wrongdoing were ever made because the parties settled in lieu of a trial.

Second, if HHS did make such a determination, what did it conclude and is there any official record of the determination for the court to review? This is important because the court needs to be able to review the basis

for the determination in order to determine whether the pecuniary advantage test has been met and that 11 U.S.C. § 525(a) has not been violated. Third, would a determination that the debtor was untrustworthy actually be sufficient grounds to exclude the debtor under 42 U.S.C. §§ 1320a–7 or 1320a–7a? HHS has not cited a statutory provision or regulation showing this as a basis for exclusion.

Faced with a similar circumstance in *In re North*, 128 B.R. 592, 602 (Bankr.D.Vt.1991), the court remarked, "[c]ourts must find the balance between giving deference to a governmental unit's unsupported explanation that its actions serve public safety, health, and welfare and to demanding proof to avoid self-serving declarations.... [T]he balance against deference shifts in favor of demanding proof of public safety purpose when it is obvious the plain purpose is to serve pecuniary interest." Although the court in *In re North* was applying the more narrow pecuniary *interest* test, in contrast to the broader pecuniary *advantage* test, the reasoning of the court is applicable to the extent that this court must be free, in determining whether § 362(b)(4) applies, to review the basis of the government's proposed actions to ensure they comply with the Code.

■ The only evidence the court has supporting HHS's proposed exclusion of the debtor is the debtor's non-payment under the settlement agreement. However, that basis alone will not suffice as grounds for excepting HHS from the stay because it would be an improper exercise of control over property of the estate and in potential violation of 11 U.S.C. § 525(a). HHS has argued that by excluding the debtor it is not exercising control over property of the estate because the provider agreements are not properly considered property of the estate. The court disagrees with HHS's contention that the provider agreements are not property of the estate.

■ What is considered property of the estate is determined by 11 U.S.C. § 541, which provides under subsection (a)(1) that, with certain exceptions, the estate consists of "all legal or equitable interests of the debtor

in property as of the commencement of the case." Courts have overwhelmingly held that property of the estate should be defined "broadly to include all of the debtor's interests, legal and equitable. . . . In fact, every conceivable interest of the debtor, future, nonpossessory, contingent, speculative, and derivative, is within the reach of § 541." *In re Yonikus*, 996 F.2d 866, 869 (7th Cir.1993) (citations omitted); *see U.S. v. Whiting Pools*, 462 U.S. 198, 204–205, 103 S.Ct. 2309, 2313–14, 76 L.Ed.2d 515 (1983); *In re Lucas*, 924 F.2d 597, 600 (6th Cir.), *cert. denied*, 500 U.S. 959, 111 S.Ct. 2275, 114 L.Ed.2d 726 (1991). However, it is also commonly accepted that the estate's rights should not be enhanced by the bankruptcy; in other words the bankruptcy estate's rights are limited to those had by the debtor at petition, which are determined by reference to state and federal law. *First Fidelity Bank v. McAteer*, 985 F.2d 114, 117 (3rd Cir.1993); *Old Stone Bank v. Tycon I Bldg. Ltd. Partnership*, 946 F.2d 271, 275–76 (4th Cir.1991).

Governmental entities have made much of this distinction in cases determining whether licenses and permits, which are analogous to the provider agreements in this case, are property of the estate. Government entities argue, as HHS has in this case, that government issued licenses and permits are not property of the estate because the debtor has no property rights in the licenses and permits because they are held only at the discretion of the monitoring agency. The right to hold the permit or license or to participate in the program is a privilege subject to regulation by the regulating entity and thus is not part of the estate, goes the argument. The courts have universally rejected the government's argument, however. *See, e.g., In re Nejberger*, 934 F.2d 1300, 1302 (3rd Cir.1991) (liquor license is property of estate); *In re Fugazy Exp., Inc.*, 124 B.R. 426, 430 (S.D.N.Y.1991) (radio call license is property of the estate), *appeal dismissed*, 982 F.2d 769 (2d Cir.1992); *In re Draughon Training Institute, Inc.*, 119 B.R. 921, 926 (Bankr. W.D.La.1990) (certificate of approval issued by state education association is property of

the estate). In accordance with the broad scope of § 541, these courts have held that the estate is comprised of all of the debtor's beneficial rights and interest in licenses and permits. The scope and extent of the estate's rights in these licenses and permits is clearly subject, however, to all applicable regulations. *See In re Farmers Markets, Inc.*, 792 F.2d 1400, 1402–403 (9th Cir.1986); *In re Corporacion de Servicios Medicos Hosp.*, 805 F.2d at 445–46. As one court explained it, "while the license itself may not be property of the estate, the trustee's rights with regard the license . . . are property of the estate within the meaning of § 541(a)(1)." *In re Kramer*, 71 B.R. 2, 5 (Bankr.E.D.Pa. 1986). The courts reason that the debtor's rights under these licenses and permits have value and should properly be subject to the jurisdiction of the court as property of the estate despite being subject to government regulation.[13] *See In re Nejberger*, 934 F.2d at 1302; *In re Horizon Air, Inc.*, 156 B.R. 369, 375–76 (N.D.N.Y.1993).

Accordingly, in this case the debtor's rights under the provider agreements to participate in the Medicaid and Medicare provider reimbursement program are properly considered property of the estate. The debtor's rights under the agreement to receive reimbursement payments from government in this program clearly have value to the debtor, as indicated by the debtor's intention to assume the agreements to fund its plan of reorganization. *See In re University Medical Center*, 973 F.2d 1065, 1074–79 (3rd Cir. 1992) (debtor's provider agreement with HHS properly assumable by debtor as executory contract). Furthermore, under the statute the debtor has a right to notice and hearing before any final determination by HHS that the debtor is excluded from the program. *See* 42 U.S.C. § 1320a–7(f). Therefore, HHS's attempt to dishonor these agreements by excluding the debtor from the program is obviously an exercise of control over property of the estate.

---

**13.** Notwithstanding HHS's contrary interpretation, the court finds the holding of *In re Medicar Ambulance Co.*, 166 B.R. 918, 927 (Bankr.

N.D.Cal.1994), in harmony with the court's analysis.

■ The more significant question, however, is whether that exercise of control is somehow improper such that it should not be excepted from the stay. Clearly, if HHS had determined that the debtor should be excluded from the program by reason of some improper action, such as fraud or other criminal activity, then the court should not prevent HHS's exclusion of the debtor. In that circumstance, HHS would be properly exercising its regulatory authority over property of the estate. In essence, HHS would be making an independent determination that the debtor's right to participate in the program was void. So, while the estate would continue to hold all the debtor's rights and interests in the program, based on HHS's regulatory determination those rights and interests would be largely valueless.

■ Such a determination of wrongdoing justifying exclusion has not been made by HHS in this case, however. Based on the record before the court, HHS's action is based solely on the debtor's default under the settlement agreement, which the court must conclude is improper. First, the court concludes that HHS's action improperly interferes with the debtor-in-possession's control over property of the estate by seeking to obtain a pecuniary advantage. Although HHS is not asking for the court's permission to take funds from the estate for a debt owed, it is seeking to enforce the remedy for non-payment of that debt, which from the debtor's perspective is a distinction without a difference.

That such an action is seeking a pecuniary advantage can be best demonstrated by examining what the result would be if the HHS action to exclude the debtor were permitted to go forward as an exception to the stay. Suppose the financially strapped provider seeks bankruptcy protection under chapter 11 to get temporary relief from the collection efforts of its creditors in order to reorganize. During the pendency of the case, the debtor is not obligated to make payments on prepetition dischargeable debt, thus giving it breathing spell to plan its reorganization. However, if HHS is permitted to exclude the debtor during the pendency of the case, in order to retain its provider agreement, the debtor must continue to make payments on its prepetition settlement agreement with HHS, ahead of all other prepetition creditors. Otherwise, HHS will exclude the debtor for non-payment. The willingness of HHS readily to engage in this type of activity is revealed by the threatening letters sent to the debtor postpetition. In essence, HHS is effectively extorting payment from the debtor of the prepetition debt because if the debtor wishes to avoid being excluded during the pendency of this case, the prepetition debt owed to HHS must be paid ahead of all other prepetition creditors.

Thus, HHS seeks to abuse the governmental exception to the automatic stay to its pecuniary advantage in order to force the debtor to continue its payments. *University Medical Center,* 973 F.2d at 1078–79 (similar analysis in context of time for assumption or rejection of provider agreement). Fearful of the exercise of just this sort of leverage by the government, many courts have held that the 11 U.S.C. § 362(b)(4) governmental exception "will not apply in a licensing context ... where the questioned action seeks to enhance pecuniary interests such as payment of taxes or fulfillment of some other monetary requirement as a prerequisite for a license renewal." *In re North,* 128 B.R. at 601–602 and cases cited therein; *see In re Colon,* 102 B.R. 421, 428 (Bankr.E.D.Pa. 1989).

■ The second reason the court concludes that HHS's proposed exclusion is improper is that it is also potentially violative of the anti-discrimination provision under 11 U.S.C. § 525(a). Based on this record, it appears HHS is seeking to exclude the debtor from a government program for non-payment of a dischargeable prepetition debt in violation of § 525(a). This sort of governmental action, which would interfere with the debtor's breathing spell and fresh start, is just the sort discriminatory activity 11 U.S.C. § 525(a) was intended to prevent. *See In re Bradley,* 989 F.2d 802 (5th Cir.1993) (state may not require payment of discharged debt as price of retaining license) (dicta); *In re Curry,* 148 B.R. 966, 972 (S.D.Fla.1992) (debtor may not be evicted from public housing for non-payment of discharged prepeti-

**534**

tion debt); *In re Adams,* 106 B.R. 811, 827–28 (Bankr.D.N.J.1989) (state may not suspend debtor's license for failure to pay prepetition surcharge); *In re Bill,* 90 B.R. 651, 658 (Bankr.D.N.J.1988) (same). The court can not make a final determination that HHS's proposed action would violate § 525(a), however, because HHS has not provided a record of its determination for the court to review in order to assess whether the debtor's lack of payment is actually the *sole* reason for the sought exclusion. It suffices for the court to conclude that on this limited record, in addition to violating the pecuniary advantage test, HHS's proposed action appears to run afoul of 11 U.S.C. § 525(a).

■ In conclusion, the court wants briefly to discuss an intriguing possibility that may result from this decision; namely that HHS could institute a brief proceeding to exclude the debtor but, based on the language of the settlement agreement, bar the debtor from contesting the exclusion. In essence, the administrative procedure in that case would be used simply to rubber-stamp the settlement agreement and would thus still potentially violate § 525(a). To avoid a similar circumstance, one court used its equity power to enjoin the administrative board from any consideration of the debtor's unpaid debt (delinquent taxes) in determining whether to renew the debtor's license (a liquor license). *See In re Nejberger,* 934 F.2d at 1303–304. The court does not find this case necessitates such an extreme remedy. However, it should be made clear that HHS's determination that the debtor is to be excluded from the program is going to have to involve more than simply rubber-stamping the settlement agreement. Otherwise, the proposed exclusion of the debtor would be based solely on the fact that the debtor failed to pay a dischargeable debt which is impermissible under § 525(a). In the same vein, the court finds HHS's contention that it is seeking to exclude the debtor for being untrustworthy a red herring. HHS is basing its conclusion of "untrustworthiness" solely on the debtor's default under the settlement agreement. Such artful argument will not be permitted to defeat the purpose of 11 U.S.C. § 525(a). HHS will have to come up with

some reason, independent of the default under the settlement agreement, to exclude the debtor from the program.

Accordingly, the court will deny HHS's motion for a declaration that its proposed action to exclude the debtor from the program is excepted, on this record, from the stay under 11 U.S.C. § 362(b)(4). This does not preclude HHS from proceeding pursuant to § 362(b)(4) to bar the debtor from the program on grounds independent of the breach of the settlement agreement.

**B.** *Relief from the Automatic Stay under 11 U.S.C. § 362(d)(1).*

■ Having concluded that HHS is not entitled to an exception from the automatic stay under 11 U.S.C. § 362(b)(4), the court turns now to consider HHS's alternative motion for relief from the automatic stay to exclude the debtor under 11 U.S.C. § 362(d)(1). HHS seeks this relief based on the debtor's alleged waiver in the settlement agreement, which HHS contends is sufficient "cause" to grant relief from the stay under 11 U.S.C. § 362(d)(1). Because the court does not view the clause in the settlement agreement as a waiver, HHS's motion will be denied.

Section 362(d)(1) authorizes the court to grant relief from the automatic stay for "cause." As there is no definition in the Code for "cause," the courts address the issue on a case-by-case basis. Some courts have found cause exists to lift the stay in cases where the debtor has signed a prepetition waiver. *See, e.g., In re Cheeks,* 167 B.R. 817 (Bankr.D.S.C.1994); *In re Club Tower, L.P.,* 138 B.R. 307 (Bankr.N.D.Ga.1991); *In re Citadel Properties, Inc.,* 86 B.R. 275 (Bankr.M.D.Fla.1988); *but see Farm Credit of Cent. Florida, ACA v. Polk,* 160 B.R. 870 (M.D.Fla.1993). These waivers, however, do not bind the debtor and the court as a self-executing agreement; rather the existence of a waiver is only one factor for the court to consider when determining whether cause exists to lift the stay. *See In re Powers,* 170 B.R. 480 (Bankr.D.Mass.1994). As the automatic stay was intended to protect all creditors, when determining whether a waiver

provides cause to lift the stay the courts consider the benefits and burdens to the debtor and creditors, the probability of reorganization and any possible bad faith on the part of the debtor. *See id.* at 484; *In re Citadel Properties, Inc.*, 86 B.R. at 276. Even if the court were inclined to follow the decisions finding cause based on waiver, the decisions are distinguishable.

Significantly, in those cases where the courts have granted relief from the stay in reliance on a prepetition waiver, those waivers have been explicitly drafted to waive relief from the automatic stay. In enforcing the explicit waivers, the courts reason that where the debtor has knowingly and intelligently consented to an explicit waiver of the right to contest a motion for relief from the stay, the debtor should be estopped from contesting the explicit terms of that waiver. *See In re Cheeks,* 167 B.R. at 818–19; *In re Hudson Manor Partners,* 1991 WL 472592, 1991 Bankr. LEXIS 2145 (Bankr.N.D.Ga. 1992).

Examples of the types of explicit waivers enforced by the courts are as follows. In *In re Cheeks,* 167 B.R. at 818, the waiver provided in relevant part:

> As further consideration to induce Mortgagee to enter into this agreement, Mortgagor agrees that in the event a proceeding under Title 11, either voluntary or involuntary, is commenced by or against Mortgagor, Mortgagor will not oppose or object to Mortgagee's Motion for Relief from the Automatic Stay.

Similarly, in *In re Hudson Manor Partners,* 1991 WL 472592, 1991 Bankr. LEXIS 2145 (Bankr.N.D.Ga.1992), the waiver provision provided:

> In the event that Borrower is the subject of any insolvency, bankruptcy, receivership, dissolution, reorganization or similar proceeding, federal or state, voluntary or involuntary, under any present or future law or act, lender is entitled to the automatic and absolute lifting of any automatic stay as to the enforcement of its remedies under the Loan Documents against the Security, including specifically, but not limited to the stay imposed by Section 362 of the United States Federal Bankruptcy Code, as amended; Borrower hereby consents to the immediate lifting of any such automatic stay, and will not contest any motion by Lender to lift such stay; Borrowing Parties expressly acknowledge that (a) there is no equity in the security after consideration of the amounts owed Lender and (b) the Security is not now, and will never be necessary to any plan of reorganization of any type.

*See also In re Club Tower, L.P.,* 138 B.R. at 310–11 (waiver provided that in event of debtor's bankruptcy, lender "shall be entitled to relief from any automatic stay imposed by Section 362 of Title 11 of the U.S.Code, as amended, or otherwise, on or against the exercise of the rights and remedies otherwise available to [the lender].")

In contrast, the waiver in the present case suffers from two inadequacies—a lack of specificity and a lack of knowing consent by the debtor. To repeat, the waiver relied on by HHS provides that "[t]he ... Parties agree not to contest such exclusion either administratively or in any State or Federal court." HHS urges the court to interpret this as a waiver of the debtor's right to contest any and all efforts by HHS to exclude the debtor, including this lift stay motion. The court declines to do so.

To the extent it is explicit, the waiver provides that the debtor will not contest the exclusion of the debtor from the program, either administratively or in court. The court interprets this to mean that the debtor will not bring an administrative proceeding or court action to contest any exclusion under the settlement agreement and the debtor has waived the right to raise any opposition in any administrative or judicial proceedings necessary for HHS to reach a decision to exclude the debtor or to enforce the exclusion. This agreement does not, however, also include a waiver of the debtor's bankruptcy rights under the Bankruptcy Code to an automatic stay against HHS's *initiation* of steps to put in place an exclusion and against HHS's *enforcement* of any exclusion determination. Such a broad reading would

stretch the meaning of the agreement beyond its terms.[14]

Furthermore, such a broad reading of the settlement exceeds the intent of the parties, which brings the court to the second failure of the waiver, a lack of knowing consent by the debtor. Based on the unrebutted affidavit of debtor's counsel, the debtor clearly did *not* intend to waive *any* of its rights in bankruptcy, including the protection of the automatic stay. Indeed, when faced with a settlement agreement that created such a possibility, debtor's counsel explicitly demanded the removal of the offending language. In these circumstances, the court can not conclude that the debtor knowingly waived his right to protection of the automatic stay.

Accordingly, the court concludes that the waiver provision of the settlement agreement is not effective to establish cause in order to lift the stay under 11 .U.S.C. § 362(d)(1).

### *CONCLUSION*

Accordingly, the motion by Health and Human Services seeking a declaration that its proposed action to exclude the debtor from the Medicare and Medicaid provider reimbursement program and applicable state health care programs is excepted from the stay under 11 U.S.C. § 362(b)(4) will be denied. This is without prejudice, however, to HHS proceeding to make a determination, in accordance with its own administrative procedures, that the debtor should be excluded from the program on grounds independent of the default under the settlement agreement.

Furthermore, the alternative motion by Health and Human Services for relief from the automatic stay under 11 U.S.C. § 362(d)(1) will also be denied. An appropriate order will follow.

---

**14.** It is not clear what the impact of 11 U.S.C. § 525(a) would be on a waiver between HHS and the debtor, even if it were explicit.